## ZIP MFG. CO. et al. v. PEP MFG. CO.

No. 815.

District Court, D. Delaware.

Oct. 24, 1930.

Ayres J. Stockly, of Wilmington, Del., and Edmund Rogers, of Cleveland, Ohio, for plaintiffs.

Ward & Gray, of Wilmington, Del., and Albert C. Nolte (of Moses & Nolte), of New York City (James N. Catlow, of New York City, on the brief), for defendant.

NIELDS, District Judge.

This is a motion by the defendant for an injunction staying the trial of this suit until arbitration of the issues involved has been had.

The bill of complaint charges the defendant with infringement of United States letters patent No. 1,353,197, for the manufacture and sale of a certain grinding compound, and prays the usual relief. On the filing of the bill the plaintiff filed a motion for a preliminary injunction with supporting affidavits. Before the hearing on this motion the defendant moved the court that proceedings in the suit be stayed pending arbitration of the issues involved, in accordance with the terms of a certain agreement in writing between the parties to this suit. This agreement embodies the terms of settlement of another and earlier patent suit involving the infringement by the defendant of the same patent which is the basis of the suit brought in this court. The arbitration provisions of the agreement are as follows:

"(10) It is expressly stipulated and agreed that Second Parties [plaintiffs in this suit] do not regard the grinding compound which First Party [defendant in this suit] is at present manufacturing and selling (a specimen of such compound in a sealed container to be at once furnished Second Parties by First Party) to be an infringement of the aforesaid Letters Patent No. 1,353,197, or any Letters Patent owned by Second Parties, or any of them, and that Second Parties will make no objection to the continued manufac-

ture and sale of such compound; furthermore, in case First Party should hereafter change its present non-infringing compound to one which Second Parties regard to be an infringement of a patent owned by them, or any of them, the question of validity and infringement shall be determined by arbitration, as hereinafter provided, and at the same time should infringement be held to have occurred, it shall be determined by the same arbitration what royalty shall be paid by First Party in lieu of profits or damages for the manufacture and sale of such compound, and First Party shall have the right to continue such manufacture upon condition that it account for and pay such royalty monthly thereafter."

"(11) In the event the parties hereto shall disagree as to any of the terms or the interpretation thereof, or the respective obligations of the parties hereunder, then such question shall, at the request of either party, be submitted to arbitration in accordance with the provisions of the now existing Statutes of the State of New York in such case made and provided."

This motion is made under section 3 of the United States Arbitration Act of 1925 (43 Stat. 883, 9 USCA § 3). The title of that act and sections 2 and 3 (9 USCA §§ 2, 3) read:

"An act to make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations."

"§ 2. That a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"§ 3. That if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

Section 1 (9 USCA § 1), after defining the terms "maritime transactions" and "commerce," excepts from the operation of the act certain contracts of employment not pertinent to be here considered.

Section 2 (9 USCA § 2) describes the provisions and agreements for arbitration that may be enforced. Section 3 and sections 4 and 5 (9 USCA §§ 3–5) provide two steps for the enforcement of the provisions and agreements for arbitration described in section 2 of the act. Section 3 affords injunctive relief by empowering the court to stay the trial of an action brought in a court of the United States until arbitration has been had. The relief afforded under section 3 may be adequate, for, after such stay, the parties may perform their agreement to arbitrate. If not, further relief is afforded under the provisions of sections 4 and 5.

The Federal Arbitration Act was modeled after the New York Arbitration Act (Consol. Laws, c. 72). Section 5 of that act provides for a stay of proceedings brought in violation of the arbitration agreements described in section 2 of the act. In each statute section 2 describes the arbitration agreements that are enforceable by stay of proceedings and specific performance.

It is quite true that the word "issue" in section 3 contained in the phrase "any issue referable to arbitration" and "the issue involved in such suit" is not defined or qualified by other words in that section. However, the word "issue" in section 3 is used interchangeably with the word "controversy" in section 2. "Issue referable to arbitration" in section 3 is the "controversy" in section 2, which the parties have agreed to settle by arbitration. As "controversy" in section 2 is confined to issues arising in commerce or maritime transactions, the same limitation attaches to the word "issue" in section 3. It is an accepted rule of statutory construction that each section of an act is to be construed with every other section and all sections are to be considered parts of a connected whole, and harmonized, if possible, so as to give effect to the intention of the lawmakers. 25 R. C. L. 1009, § 248. I am satisfied that the "agreement in writing" for arbitration referred to in section 3 is limited by the provisions of section 2. In this suit the controversy arises out of the alleged infringement of a patent. The provision in the agreement of the parties dated March 16, 1929, "that the

question of validity and infringement shall be determined by arbitration," relates to a controversy involving neither commerce nor a maritime transaction, as defined in the act, and therefore is not enforceable under the Federal Arbitration Act.

The foregoing construction of the act is fortified by a consideration of the legislative history behind the statute and of the circumscribed class of disputes adapted to arbitration. The legislative history behind arbitration statutes and the character of the tribunal substituted for the courts clearly indicate that it was the intention of Congress that the Federal Arbitration Act should be confined to agreements for the arbitration of disputes arising in commerce and in maritime transactions. The federal statute was passed in response to a demand from commercial bodies. The sponsor of the bill submitted to Congress was the Committee on Commerce, Trade and Commercial Law of the American Bar Association. The tribunal substituted for the courts is primarily adapted to settle business disputes. In an article on the Federal Arbitration Law in 12 Virginia Law Review, 265, 281, Mr. J. H. Cohen, who for many years has taken an active part in advocating arbitration legislation in this country, says:

"Not all questions arising out of contracts ought to be arbitrated. It is a remedy peculiarly suited to the disposition of the ordinary disputes between merchants as to questions of fact—quantity, quality, time of delivery, compliance with terms of payment, excuses for non-performance, and the like. It has a place also in the determination of the simpler questions of law—the questions of law which arise out of these daily relations between merchants as to the passage of title, the existence of warranties, or the questions of law which are complementary to the questions of fact which we have just mentioned."

The determination of the status of a patent, its validity or invalidity, its infringement or noninfringement, is a matter that is inherently unsuited to the procedure of arbitration statutes.

Defendant suggests that the word "contracts" in the title of the act indicates that sections 3, 4, and 5 of the act are not confined to agreements to arbitrate controversies arising from commerce or maritime transactions as defined in sections 1 and 2. Section 2 of the bill (S–1005), as referred to the Committee on the Judiciary of the Senate, read as follows:

"Sec. 2. That a written provision in any *contract* or maritime transaction or transaction involving commerce to settle by arbitration any controversy thereafter arising between the parties out of such contract or transaction, or the refusal to perform in whole or in part thereof or an agreement in writing to submit to arbitration any existing controversy arising out of such a contract, transaction or refusal shall be valid, irrevocable and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."

The Senate Committee struck out the word "contract," but made no change in the title of the act, and on May 14, 1924, reported section 2 in the amended form in which it was finally passed, viz.:

"Sec. 2. That a written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy arising out of such a contract, transaction, or a refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at Law or in Equity for the revocation of any contract." (Senate Report No. 536, 68 Cong. 1 Sess.)

Whatever meaning attached to the word "contracts" in the title of the act was nullified when the word "contract" was eliminated, by way of amendment, from the body of the act.

The motion to stay proceedings will be denied, and the cause will proceed in the usual course on the merits.