**SAUCY SUSAN PRODUCTS, INC.,**
Plaintiff,

v.

**ALLIED OLD ENGLISH, INC., and**
**Harold Ross, Defendants.**

United States District Court
S. D. New York.
Dec. 21, 1961.

Hays, St. John, Abramson & Heilbron, New York City, for plaintiff; Elias Messing, New York City, of counsel.

Irving C. Nachbar, New York City, for defendants; David Advocate, New York City, of counsel.

FEINBERG, District Judge.

Defendants Allied Old English, Inc. ("Allied") and Harold Ross have brought a motion under Title 9, U.S.C. § 3 for an order staying an action brought against them by plaintiff Saucy Susan Products, Inc. ("Saucy Susan") and directing plaintiff to arbitrate the issues between them. Saucy Susan's action against defendants is for trademark infringement and unfair competition with jurisdiction based upon 28 U.S.C. § 1338.

Allied is a manufacturer of food sauces and Ross is its president and apparent owner. In November 1958, Allied entered into a business transaction with Emanuel Adelman. One part of the transaction was a sale by Allied of its rights to certain trademarks and trade names and a grant to Adelman of a nonexclusive right to use certain formulae in producing the products using these trademarks and trade names. This transaction was evidenced by a bill of sale.

A simultaneous part of the transaction called for Allied to manufacture the food sauces to be sold under these trademarks and trade names with Allied supplying and Adelman purchasing his entire requirements of such food sauces for a tenyear period. This transaction was embodied in an agreement ("the manufacturing agreement") between the parties which contained the following arbitration clause:

"12. ARBITRATION. Any controversy or claim arising out of or relating to this agreement or the breach thereof shall be settled by arbitration in the City of New York in accordance with the rules then obtaining of the AMERICAN ARBITRATION ASSOCIATION, and judgment upon the award rendered may be entered in any Court having jurisdiction thereof."

Another paragraph of the manufacturing agreement tied together the provisions of the bill of sale with the manufacturing agreement as "the entire agreement of the parties." This provision stated:

"15. ENTIRE AGREEMENT. This instrument and the bill of sale from ALLIED to ADELMAN executed and delivered simultaneously herewith contains the entire agreement of the parties. It may not be modified or discharged orally. This agreement shall be construed against neither party. The paragraph headings are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope or intent of this agreement, nor in any way affect this agreement."

On the same day, Adelman also entered into an employment agreement ("the employment agreement") with Ross, hiring Ross as a consultant for ten years to assist in the manufacture and promotion

of the sauces to be sold by Adelman at a compensation set forth in the employment agreement. Part of Ross' compensation was a percentage on all net sales above a minimum gross on sales of products under the trade names and trademarks transferred. The employment agreement contained an arbitration clause identical to the clause in the manufacturing agreement.

On December 1, 1958, Adelman assigned all his rights under the bill of sale, the manufacturing agreement and the employment agreement to plaintiff corporation of which he is president. Plaintiff assumed in writing and agreed to perform all the terms and conditions of these instruments and agreements. Thereafter, plaintiff and defendants apparently operated under these instruments and agreements for almost three years. At that point, some serious differences arose between the parties. On September 25, 1961, defendants commenced arbitration proceedings against plaintiff. On October 2, 1961, plaintiff began its action in this Court against defendants for trademark infringement and unfair competition. Defendants thereafter brought their motion for a stay and to compel arbitration.

Plaintiff argues in opposition to defendants' motion that: (1) it was never intended that issues arising out of the sale of defendants' trademarks and trade names would be the subject of arbitration; (2) one of the trademarks which forms the basis of plaintiff's action was not the subject of the 1958 transactions and, therefore, cannot be covered by an arbitration clause contained in the agreements made at that time; and (3) certain of the relief sought by plaintiff cannot be obtained in an arbitration proceeding.

Plaintiff's first contention regarding the intention of the parties appears to contain two bases. First, plaintiff argues that the transaction evidenced by the bill of sale was completed by the payment of the consideration for the trademarks and trade names, so that there was nothing executory in nature which the parties could regard as a possible subject of future arbitration. This contention, however, is not borne out by the terms of the bill of sale or the contemporaneous agreements. The bill of sale clearly contemplates executory obligations and rights in both parties and the manufacturing agreement refers to the bill of sale and states that the two instruments together contain the entire agreement of the parties. Since the manufacturing agreement contains an arbitration clause, it is clear that the parties contemplated that controversies under either the bill of sale or the manufacturing agreement could be the subject of arbitration.

However, plaintiff's second basis for its argument regarding the intention of the parties poses more difficulty. Its contention here is that the issues involved in its suit for trademark infringement and unfair competition "are much broader and of different character than those contemplated by the parties for submission to arbitration." Plaintiff's memorandum points out that the complaint "sounds in tort and seeks to enjoin unfair competition by defendants as well as relief stemming from the infringement by defendants of plaintiff's trademarks. The contracts, on the other hand, cover a simple commercial transaction." Simply stated, it is plaintiff's argument that the parties did not agree to arbitrate "tortious or perhaps even criminal acts committed by the defendants."

Before dealing with this contention, it should be noted that no question has been raised as to whether in this proceeding under Title 9, U.S.C. § 3, the contract relied upon as requiring arbitration is one evidencing a transaction involving commerce. Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 409 (2 Cir. 1959); Metro Industrial Painting Corp. v. Terminal Const. Co., 287 F.2d 382, 384 (2 Cir., cert. denied 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed. 2d 24 (1961). This requirement, however, is apparently met since it appears from the papers that plaintiff's principal

place of business is in New York, while Allied's principal place of business as a manufacturer is in New Jersey, so that presumably the products were shipped interstate, that plaintiff's products are sold in interstate commerce and that defendants' products allegedly bearing the same names are also sold in interstate commerce.

■ Defendants have urged that in determining the issues presented, federal law is controlling. Here, too, plaintiff has not raised an issue and it appears that, under the Lawrence case, the applicable law is federal. Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80 at footnote 5 (2 Cir. 1961).

■ On the merits of plaintiff's argument, there are a number of considerations suggesting that the disputes now existing between the parties are completely arbitrable. First, there is what the Court of Appeals for this Circuit referred to in the Metro Industrial case as (287 F.2d at 385):

> " * * * the federal policy to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration."

Similarly, the broad nature of the standard American Arbitration Association clause used in this case was referred to by the Court of Appeals in In re Kinoshita & Co., 287 F.2d 951, 953 (2 Cir. 1961).

Second, the sale of the trademarks and trade names by defendants was clearly part of a single business transaction that contemplated a continuing relationship which might lead to disputes. The manufacturing agreement incorporates the instrument evidencing that sale into one agreement of the parties. That agreement did have a broad arbitration

clause. The present disputes involve various aspects of the entire business transaction. Thus, defendants' claims in the arbitration proceedings are for $75,000 for breach of the employment agreement and $159,299.68 for breach of the manufacturing agreement, including the value of goods sold and delivered. Plaintiff's claims in this action are that defendants have been using the trademarks previously sold to plaintiff since November 1958. If true, this would be a clear breach of the various agreements between the parties and, depending on the facts, would appear to be at least a partial defense to defendants' claims in the arbitration for breach of contract by plaintiff, as well as a possible counterclaim.

■ Third, the fact that plaintiff's complaint "sounds in tort" would not appear to be controlling. Thus, the complaint in the Lawrence case apparently "sounded" in tort.[1] The plaintiff in that case sought damages for allegedly fraudulent misrepresentations and characterized its action in the District Court "as an action in tort not contract"[2] and in the Court of Appeals as "an action in deceit based on the fraud of defendant."[3] Nevertheless, the Court of Appeals reversed the lower court and granted a stay of proceedings on plaintiff's complaint, pending arbitration pursuant to 9 U.S.C. § 3. In the course of its opinion, the Court of Appeals said (271 F.2d at 410):

> "It would seem to be beyond dispute that the parties are entitled to agree, should they desire to do so, that one of the questions for the arbitrators to decide in case the controversy thereafter arises, is whether or not one of the parties was induced by fraud to make the principal contract for the delivery of the merchandise. Surely there is no public policy that would stand as a

1. Channel Master Corp. v. Aluminum Ltd. Sales, 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958) sets forth the elements of a tort action based on fraud and deceit all of which are alleged in the complaint filed in Lawrence. See also Starr v. O'Rourke, 5 Misc.2d 646, 159 N.Y.S.2d 60 (Sup.Ct.1957).

2. Memorandum of law in opposition to motion to stay the proceedings p. 1.

3. Brief of plaintiff-appellee p. 1.

bar to an agreement of such obvious utility, as is demonstrated by the facts of this case. The issue of fraud seems inextricably enmeshed in the other factual issues of the case."

■ It is important to note that plaintiff does not urge that there is a public policy against arbitrating plaintiff's claims of trademark infringement and unfair competition.[4] Thus, there is not here present the type of problem resolved in Reader v. Hirsch & Co., 197 F.Supp. 111 (S.D.N.Y.1961) where a suit was brought under the provisions of Section 7 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78g. On a motion to stay the action pending arbitration, this Court held that the parties could not waive their statutory rights in advance where the statute contained a non-waiver clause or Congressional purpose would be thwarted by such waiver.[5] Ibid, 197 F. Supp. at 116. However, this is not the case here. There is no non-waiver provision in the Lanham Trademark Act, 15 U.S.C.A. § 1051 et seq., under which plaintiff's trademarks are registered, and it does not appear that an agreement to arbitrate future disputes would thwart Congressional policy.[6]

Plaintiff relies heavily on two cases: Metal Polishers Union, Local 90, AFL v. Rubin, 85 F.Supp. 363 (E.D.Pa.1949) and Wyatt Earp Enterprises v. Sackman, Inc., 157 F.Supp. 621 (S.D.N.Y.1958). The Metal Polishers case denied a motion for a stay pending arbitration of a labor

dispute and is clearly distinguishable. It relied upon the precise language of the collective bargaining agreement in question in holding that the dispute between the parties was not covered by the arbitration clause.[7]

In the Wyatt Earp case, plaintiff was the producer of the Wyatt Earp series on television and had licensed defendant to use the name "Wyatt Earp" in the manufacture and marketing of children's play suits. The license agreement contained an arbitration clause. The license agreement was not renewed and another manufacturer was licensed in place of defendant. Thereafter, according to the complaint, defendant continued, nevertheless, to use the name. Plaintiff sued for an injunction claiming unfair competition and violation of the Lanham Trademark Act and defendant petitioned for a stay pending arbitration. This Court refused to compel arbitration. There are, of course, great similarities between the Wyatt Earp decision and the instant case. However, Wyatt Earp was decided before the Lawrence and Metro cases in the Court of Appeals in this Circuit which emphasized the federal policy of construing arbitration clauses liberally. In addition, the case is distinguishable since the licensing agreement containing the arbitration clause had expired and the acts complained of by plaintiff took place after its expiration date.

■ Plaintiff's final contention on the broad issue of construction of the arbitration clause is that defendants' con-

4. See Cavicchi v. Mohawk Mfg. Co., 34 F. Supp. 852 (S.D.N.Y.1940) where this Court gave effect to an arbitration award which decided questions of patent infringement between the parties; Mohawk Mfg. Co. v. Cavicchi, 281 N.Y. 629, 22 N.E.2d 179 (1939); appeal dismissed 308 U.S. 522, 60 S.Ct. 294, 84 L.Ed. 442 (1939); but cf. Zip Mfg. Co. v. Pep Mfg. Co., 44 F.2d 184 (D.Del.1930.)

5. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953).

6. Counsel for both parties in this case agree "that the arbitration clause in the contracts involved herein are not subject to attack as being against public policy

or otherwise unenforcible." Joint letter to the Court, November 15, 1961.

7. See United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed. 2d 1424 (1960); United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); cf. Sinclair Refining Co. v. Atkinson, 290 F. 2d 312 (7 Cir. 1961); cert. granted 368 U.S. 937, 82 S.Ct. 376, 7 L.Ed. 2d 336 (1961); Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers, 287 F.2d 155 (2 Cir. 1961).

duct may also have violated section 964 of the New York Penal Law. From this, plaintiff's memorandum urges that the arbitration clause could not "cover any such claims or controversies." If plaintiff means that the arbitration clause could not prevent a criminal charge against defendants I would agree, since this would involve more than the private rights between the parties. But beyond that I do not think the argument adds anything to what has already been discussed above.

In summary, plaintiff's argument is one of intent; i. e., of reasonable construction of the arbitration clause. After fully considering all of its contentions, I feel that the claims plaintiff has made in this Court against defendants and the controversy with defendants grow out of one business transaction and that they are a controversy and claims "arising out of or relating to" the agreements discussed above "or the breach thereof" and should, therefore, be arbitrated.

■ Plaintiff's remaining contentions do not, I feel, require extended discussion. Plaintiff argues that one of the trademarks allegedly infringed was not part of the original transaction and, in fact, was not registered by plaintiff until over two years thereafter. The mark in question is "Saucy Susan." However, since one of the marks originally sold by defendants to plaintiff's assignor was "Saucy Sue", I believe that any claim as to "Saucy Susan" is "sufficiently related to the original contracts that arbitration may proceed." [8] Plaintiff's final point that it cannot get preliminary injunctive relief [9] is irrelevant if it has agreed to arbitrate its claims. It is pertinent only if used to show that plaintiff did not agree to arbitrate these claims. However, for the reasons indicated above, I feel that a reasonable construction of

the arbitration clause does encompass plaintiff's claims.

For all of the above reasons, therefore, defendants' motion for a stay pending arbitration is granted.

Settle order on notice.

---

8. Lummus Co. v. Commonwealth Oil Refining Co., supra, 297 F.2d 91; accord, Gray Mfg. Co., v. Anemostat Corporation, 64 N.Y.S.2d 815 (Sup.Ct.1946).

9. But note Section 42 of the Commercial Arbitration Rules of the American Arbitration Association which states, in part: "The Arbitrator in his award may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract."