In the Matter of the Arbitration between
SOUTH EAST ATLANTIC SHIPPING
LIMITED, Petitioner-Appellee,
and
GARNAC GRAIN COMPANY, Inc.,
Respondent-Appellant.

No. 175, Docket 29960.

United States Court of Appeals
Second Circuit.

Argued Dec. 9, 1965.

Decided Feb. 8, 1966.

Sirius C. Cook, Healy & Baillie, New York City, on the brief, for petitioner-appellee.

John R. Sheneman, New York City (Zock, Petrie, Sheneman & Reid, and Anthony N. Zock and Philip J. Curtin, New York City, on the brief), for respondent-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

Garnac Grain Company, Inc. ("Garnac") appeals from a judgment of the District Court for the Southern District of New York confirming an award of a majority of arbitrators appointed pursuant to a voyage charter party between European Grain & Shipping Agency Ltd., as agent for Garnac, and S. Livanos Shipbrokers Limited ("Livanos"). Jurisdiction is based on the United States Arbitration Act, 9 U.S.C. § 1 et seq.

The arbitrators' award required Garnac to pay $214,939.43 to appellee South East Atlantic Shipping Limited ("Atlantic"), the shipper nominated by Livanos under the charter party, for damages arising out of Garnac's breach of the charter party. Garnac contends that the judgment should be reversed and the arbitrators' award vacated because the award was punitive in nature. Garnac alleges in the alternative that "evident miscalculations" require a modification of the award by this court. We find no merit in these contentions and affirm the judgment. We also award Atlantic an additional 4% of the arbitrators' award under Rule 26(b) of the rules of this Court.

The facts leading up to the appointment of the arbitrators demonstrate that the award was well within the authority conferred upon them by the charter party. The agreement, which was executed on October 17, 1963, provided that a motorship to be named by Livanos by January 1, 1964, would carry some 23,000 long tons of grain from a port in the U. S. Gulf to one of three ports in Japan at a basic freight rate of $15.00 per long ton. The charter party contained both a damages and an arbitration clause.[1]

The market rate on grain shipments fluctuated sharply during the last half of 1963 and early 1964 because of uncertainties as to whether Russia would make large purchases of United States grain. The market was down at the turn of the year and, so, when Livanos failed to nominate a vessel by January 1, Garnac had its London agent cancel the contract on January 2.[2] Also on January 2, Livanos nominated the *MV Antonios Demades*, owned by Atlantic, to perform under the charter. This nomination was rejected by Garnac's agent as untimely.

On January 4, Garnac's agent made an offer in writing to Livanos to charter the *Antonios Demades* on the same terms as those of the charter party but at a rate of only $12.00 per long ton; this offer, ostensibly made "in order to assist and to minimize damages," was to remain open until January 6. It was not accepted by Atlantic, which on January 6

1. The charter party provided, in part:
"That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men . . .

"Penalty for nonperformance of this agreement, estimated amount of freight."
The arbitration provision is the standard "New York Produce Exchange Arbitration Clause."

2. There is evidence in the record that Garnac's conduct amounted to what the arbitrators termed a "premeditated plan to cancel" the contract. In a Telex message to its London agent on January 2, Garnac requested the agent to "make certain you have proof or at least notes of timing of owners [Atlantic's] communications" because "if case goes to arb may need you as witness." The Telex correspondence then continued:

"under US law it is considered duty of both parties minimize damages theref next step intend probably offer owners accept vsl at 12.—which present mkt and if we win arb pay 12.—if owners win pay 15.—However bef doing this want to see owners reaction as next move up to them."
Commenting that "it's rough for an exporter to make a living when the market is always going the wrong way," Garnac's Chartering Manager testified to the arbitrators that "I considered it just normal business practice to give instructions to London to cancel the charter."

wrote Garnac's agent stating that, unless Garnac acknowledged within 48 hours that the October 17 charter party was still in full force, Atlantic planned to charter the *Antonios Demades* against the charterer and claim any losses in arbitration in New York. Upon receipt of this letter, Garnac chartered a different vessel at $12.25 per ton for the cargo allocated to the October 17 charter party.

Upon consideration of the dispute, a majority of the arbitrators agreed that the failure of Livanos to nominate by January 1 was a technical breach of the charter party[3] (for which no damages were proved by Garnac) but that it was not a condition precedent entitling Garnac to repudiate the contract. Thus, the panel unanimously held that Garnac's cancellation was an anticipatory breach of the contract. A majority of the panel found that Garnac's mitigation offer of January 4 was bona fide and firm, but the entire panel agreed that Atlantic was not required to accept the $12.00 offer and thus that the January 4 offer did not fix Atlantic's damages at $3.00 per ton.

The arbitrators did not agree, however, on the appropriate damage award. To mitigate its damages, Atlantic had finally shipped a cargo of grain on the *Antonios Demades* from a U. S Gulf port to Japan at a rate of $8.00 per ton on February 28, 1964. Two of the arbitrators decided that, while as a matter of hindsight Atlantic could have received more in mitigation of its damages had it not waited so long for a substitute shipment, it was not remiss in its duty to mitigate in view of the unpredictable state of the market during the period in question. The majority awarded Atlantic $53,000 for the delay suffered in finding a substitute shipment and $157,500 for the $7.00 per ton less received by Atlantic under the

substitute charter party, with interest at 4½%.

The dissenting arbitrator concluded that, under all the circumstances, Atlantic had not adequately satisfied its duty to mitigate damages. He settled upon an arbitrary figure of $10.50 per ton which Atlantic could reasonably have received on its substitute shipment had it acted prudently; he assessed damages, based on this figure plus interest, of $104,-079.98.

Judge Palmieri concluded that the comments of the majority opinion were well substantiated by the record and that the reasoning and conclusions of the majority indicated that they went out of their way to avoid assessing punitive damages. He also found no merit in Garnac's contention that the majority had committed evident miscalculations.

Garnac insists that the arbitrators' award was punitive in nature and therefore that it exceeded their powers under the contract. Moreover, Garnac contends, such a punitive award is unenforceable because it is contrary to public policy and is in "manifest disregard" of the law. See Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 98 L.Ed. 168 (1953) (dictum); Local 453, International Union of Electrical, Radio & Machine Workers, AFL–CIO v. Otis Elevator Co., 314 F.2d 25, 29 (2 Cir. 1963). Garnac's brief points out numerous passages in the majority's opinion which allegedly support Garnac's allegation of improper conduct.

 We do not think it necessary to deal with each of these specific allegations. Nor do we find it necessary to determine whether an arbitrators' award could be so clearly punitive as to exceed their contractual powers or to be otherwise unenforceable. Under our limited scope of review of arbitration awards,[4]

---

3. One of the majority arbitrators concluded that Livanos' nomination was not untimely because January 1 was a holiday and because the Charterers' office was not open for part of the day. There was

no issue of bad faith on the part of Livanos or Atlantic.

4. 9 U.S.C. § 10 provides:
"In either of the following cases the United States court in and for the dis-

we are bound by the arbitrators' factual findings and by their interpretation of the contract and of contract law. Here, the arbitrators were free to conclude that Garnac's repudiation of the contract was unjustified, that Atlantic's duty to mitigate did not require it to accept Garnac's offer of January 4, and that Atlantic's subsequent actions satisfied its duty to mitigate. Although as an original matter we might not agree with their resolution of particularly the latter two questions, the purposes behind the Arbitration Act were to give arbitrators considerable latitude in resolving such contractual issues. See, e. g., Marcy Lee Mfg. Co. v. Cortley Fabrics Co., 354 F.2d 42 (2 Cir. 1965).

■ Finally, although the panel majority's opinion indicates that they were morally outraged by Garnac's conduct in repudiating the contract and then in attempting to hedge its position by the counter-proposal of January 4, we agree with Judge Palmieri that the award was not punitive. Moreover, we think it within the arbitrators' power to consider such questions of business morality in determining whether to award Atlantic the full extent of its loss regardless of whether some of that loss, in retrospect, might have been avoided. Such an award, however liberal, does not amount to an "unlawful" assessment of punitive damages. Compare Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299 (2 Cir. 1963).

■ Garnac also renews its contention that the award contains "evident material miscalculations of figures" which require modification by this court. See 9 U.S.C. § 11(a). From our examination of the record and the award, it appears that any "miscalculations" were due to the rounding off of the damage figures that the arbitrators' specific computations produced. Such rounding off did not work to the significant disadvantage of either Garnac or Atlantic. We do not consider such discrepancies material. If such calculations were to be subject to judicial review, there would be few arbitration awards which would be immune from the very time and money consuming court reviews which arbitration is designed to avoid.

Atlantic contends that Garnac's appeal is frivolous, that it was brought for the purpose of delaying Atlantic's eventual recovery, and therefore that this court should assess a penalty of 10% of the judgment below pursuant to our powers under Rule 26(b) of the rules of this Court.[5] Atlantic alleges that the supply of funds to foreign-flag tramp operators is limited at this time and hence that the 6% interest running on the judgment is insufficient compensation for delayed payment to Atlantic and a calculated windfall to Garnac.

■ We agree that the issues raised by Garnac on this appeal are frivolous; they have been frequently resolved against litigants challenging the propriety of arbitration awards. We look with

---

trict wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

 (a) Where the award was procured by corruption, fraud, or undue means.

 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.

 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

 (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. * * *"

5. Rule 26(b) provides:

 "*Damages for Appeal for Delay.* In all cases where an appeal shall delay the proceedings on the judgment, decree, or order of the lower court, and shall appear to have been sued out merely for delay, damages at a rate not exceeding 10 per cent, in addition to interest, shall be awarded upon the amount of the judgment, decree, or order." United States Court of Appeals, 2d Cir., Rule 26(b), 28 U.S.C.A.

disfavor on attempts to have courts, and particularly courts of appeals, re-examine arbitration awards. Because of our narrow statutory scope of review, this is the kind of appeal that is least likely to have merit, and it is therefore an appropriate instance for the invocation of our Rule 26(b) powers, at least where, as here, the inference of an intent to delay is plausible. However, since we have seldom invoked our power under Rule 26(b), and since interest at the rate of 6% is already running on the judgment to Atlantic, we consider a 10% penalty excessive.

Consequently, we affirm the judgment of the district court, and we award Atlantic an additional 4% of the arbitrators' original award of $214,939.43.