**In the Matter of Lowell S. FALLICK, Bankrupt-Appellant,**

v.

**Harry KEHR, Appellee.**

**No. 157, Docket 30549.**

United States Court of Appeals
Second Circuit.

Argued Nov. 3, 1966.

Decided Dec. 14, 1966.

900

Michael Berman, New York City
(David H. Berman, New York City, on
the brief), for bankrupt-appellant.

Alan Shapiro, New York City (Nathan Shapiro, New York City, on the brief), for appellee.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

■ From this deceptively simple case emerges a difficult issue—must a bankruptcy court prevent an arbitrator from deciding whether a debt has been discharged in bankruptcy? We hold that no flat rule is justified and that the matter rests in the discretion of the bankruptcy court. Finding no abuse in the exercise of that discretion by the United States District Court for the Southern District of New York, John F. X. McGohey, J., we affirm.

The background of this litigation is as follows: Appellee Harry Kehr sued appellant Lowell S. Fallick in the Supreme Court of New York in October 1964; the complaint alleged that Fallick misappropriated partnership funds to his own use. In November, Fallick moved for an order compelling arbitration on the basis of an arbitration clause in a partnership agreement. Kehr thereupon abandoned his court action and commenced arbitration proceedings against Fallick according to the rules of the American Arbitration Association. In January 1965, Fallick filed a voluntary petition in bankruptcy in the Southern District of New York. In February, the bankruptcy court stayed all proceedings (including the arbitration) pending conclusion of the bankruptcy proceeding. Fallick was ultimately discharged in bankruptcy later in 1965, and the stay thereupon lapsed. Thereafter, Kehr reactivated the arbitration proceeding. Before any arbitration hearing was held, however, Fallick moved before the bankruptcy referee for an order permanently staying Kehr from proceeding with the arbitration; Fallick also sought a ruling that Kehr's claim against him was discharged by bankruptcy. Kehr alleges here that since his claim against Fallick grew out of a willful and malicious injury, it was not affected by the discharge in bankruptcy. The referee denied Fallick's motion. Fallick's petition for review of the referee's order was denied by Judge McGohey, and this appeal followed.

■ Both the referee and the district court recognized their power to enjoin the arbitration proceeding but declined to do so in the absence of "unusual circumstances," citing Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). But these are present, according to appellant, because the dischargeability of the claim against him will not be decided by a judge but rather by an arbitrator who is not bound to follow the law and whose errors of law cannot be reviewed. Since no other "unusual circumstances" are urged, the issue is whether these facts alone deprived the bankruptcy court of all discretion. No serious argument can be made that other factors show an abuse of discretion. Judge McGohey carefully pointed out that: no attempt was made to show embarrassment or harassment by Kehr; Fallick himself deprived Kehr of a state court forum by moving to compel arbitration; Fallick, as well as Kehr, originally agreed to submit all claims growing out of the partnership to arbitration; it could not reasonably be inferred that Kehr was hoping that Fallick would fail to recognize his right to assert the discharge as a defense; the arbitrator was an attorney;[1] Fallick had the right to counsel at every stage of the arbitration proceedings; and there is no policy evidenced by the Bankruptcy Act or precedent prohibiting an arbitrator from determining the effect of a discharge in bankruptcy.

In considering the issue posed by this appeal, some history is helpful. Prior to Local Loan Co. v. Hunt, supra, the distinction between the right to a bankruptcy discharge and its effect had been well recognized; the bankruptcy court determined the former issue, and the

1. Record, p. 90.

effect of the discharge as to any particular debt was resolved in the court in which a creditor sought to enforce the claim. The rule was apparently designed to decrease the volume of litigation in the federal courts and expedite administration of bankrupt estates. See Smedley, Bankruptcy Courts as Forums for Determining the Dischargeability of Debts, 39 Minn.L.Rev. 651 (1955). It has been noted that under this system the bankruptcy court issued "a strange form of decree which must be taken to another court for an interpretation of its effect."[2] Thus, an unscrupulous creditor could proceed against a discharged bankrupt on a pre-bankruptcy debt hoping that the debtor would fail to plead his discharge in defense or pay the debt rather than suffer the expense of a legal war of attrition. See Moore, Res Judicata and Collateral Estoppel in Bankruptcy, 68 Yale L.J. 1, 27 (1958).

In Local Loan Co. v. Hunt, supra, a discharged bankrupt asked the bankruptcy court to enjoin a loan company from prosecuting an action against his employer to enforce an assignment of his wages earned after bankruptcy adjudication. The injunction issued and was affirmed by the circuit court of appeals. In the Supreme Court, the loan company argued that the bankruptcy court was either without jurisdiction to enter the injunction, or, alternatively, that the injunction was erroneous because the assignment was enforceable. In the face of this challenge to power, the Court held that, as a court of equity, a bankruptcy court can entertain "a supplemental and ancillary bill * * * in aid of and to effectuate the adjudication and order made by the same court." 292 U.S. at 239, 54 S.Ct. at 697. The Court went on to state (id. at 241–242, 54 S.Ct. at 697–698):

> What has now been said establishes the authority of the bankruptcy court to entertain the present proceeding, determine the effect of the adjudication [of bankruptcy] and order [discharging respondent from all provable debts and claims], and enjoin petitioner from its threatened interference therewith. It does not follow, however, that the court was bound to exercise its authority. And it probably would not and should not have done so except under unusual circumstances such as here exist. * * * As will be shown in a moment, the sole question at issue is one which the highest court of the State of Illinois had already resolved against respondent's contention. The alternative of invoking the equitable jurisdiction of the bankruptcy court was for respondent to pursue an obviously long and expensive course of litigation, beginning with an intervention in a municipal court and followed by successive appeals through the state intermediate and ultimate courts of appeal, before reaching a court whose judgment upon the merits of the question had not been predetermined. The amount in suit is small, and * * * such a remedy is entirely inadequate because of the wholly disproportionate trouble, embarrassment, expense, and possible loss of employment which it involves.

In sum, under Local Loan Co. v. Hunt, the bankruptcy court may exercise its discretion to enjoin a suit against a discharged bankrupt on a discharged claim, but only if there are "unusual circumstances" or as this court has phrased it, only if there is "special embarrassment." Ciavarella v. Salituri, 153 F.2d 343, 344 (2d Cir. 1946). Otherwise, the discharge must continue to be used as a shield by the bankrupt if he is sued, and when issue is joined in a state court on the effect of the discharge vis-a-vis a particular claim, that tribunal, and not the bankruptcy court, will make a determination it has engaged in innumerable times. See generally 1 Collier, Bankruptcy ¶¶ 2.62[5], 17.27, 17.28 (14th ed. 1966).

What the unusual circumstances are that justify bankruptcy court intervention has been frequently litigated since

---

2. Twinem, Discharge—What Court Determines the Effect Thereof, 21 Ref.J. 33, 34 (1946).

Local Loan Co. v. Hunt. See Note, Ancillary Jurisdiction Inherent in the Bankruptcy Court, 11 Syracuse L.Rev. 214 (1960). The question has been a troublesome one, and has led to proposals for legislation, none of which has as yet been enacted.[3] However, research does not disclose any reported case raising the issue posed here—whether the inability to correct a possible error of law by an arbitrator is such an unusual circumstance. Many of the cases stem from suits by a loan company against a small creditor, the situation that gave rise to Local Loan Co. v. Hunt. It is from two of these that appellant extracts support. Thus, in State Fin. Co. v. Morrow, 216 F.2d 676 (10th Cir. 1954), after a bankrupt had been discharged, a loan company sued on a pre-bankruptcy note in a justice of the peace court. The bankrupt sought a stay in the federal court, and the loan company asserted that it could rebut in the state court any defense of discharge by showing fraud in the procurement of the note. In affirming a stay of the state court proceedings, the appellate court stressed that the state tribunal "was not a court of record where issues of law and fact are defined with any degree of particularity,"[4] which would prevent the bankruptcy court from determining whether any judgment was based on the discharged debt on the note or on the fraud that may have induced it. A similar result was reached by the same court in Personal Industrial Loan Corp. v. Forgay, 240 F.2d 18 (10th Cir. 1956), cert. denied, 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957). While the reasoning of the former case and the results in both do lend some support to appellant, each is concerned with the problem of harassment of small creditors by loan companies. See *Forgay*, supra at 20–21, 77 S.Ct. 1380. That situation was not before the district court in this case.

What we are asked to do is rule as a matter of law that the fact of imminent arbitration of the issue of dischargeability requires equitable relief. As we see it, such an unswerving rule would have to be based on distrust of the arbitration process, or on an overriding policy of the Bankruptcy Act or on both. As to the first, we need not say much. Logically, if the possibility that an arbitrator may make an unreviewable error of law alone justifies enjoining one arbitration, it requires enjoining all. But judicial hostility to arbitration has not recently been characteristic of this court,[5] properly so in the face of national policy favoring arbitration.[6] Arbitrators frequently decide issues of law, some of them at least as difficult as the issue of dischargeability raised here, e. g., fraud in the inducement of a contract.

3. E. g., H.R. 5643, 89th Cong., 1st Sess. (1965) (gives bankruptcy court jurisdiction to determine dischargeability of particular debt upon application of any party in interest). According to Brendes & Schwartz, Schlockmeister's Jubilee: Bankruptcy for the Poor, 40 Ref.J. 69, 71 n. 18 (1966), for a number of years Congressman Celler has introduced a bill giving the bankruptcy court exclusive jurisdiction over the dischargeability of debts.

4. 216 F.2d at 680.

5. See, e. g., South E. Atl. Shipping Ltd. v. Garnac Grain Co., 356 F.2d 189, 193 (2d Cir. 1966) (appellant penalized for seeking broad review of arbitration award); Local 453, Int'l Union of Elec., etc., Workers v. Otis Elevator Co., 314 F.2d 25 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963) (award enforced over claim of public policy); Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978, 985 (2d Cir. 1942) ("our obligation to shake off the old judicial hostility to arbitration").

6. See, e. g., 9 U.S.C. (arbitration clauses in maritime or commerce transactions); 18 U.S.C. §§ 206, 208 (bribery of arbitrator); 22 U.S.C. § 2395(i) (arbitration of claims arising out of investment guaranty operations); 29 U.S.C. § 108 (arbitration as prerequisite to injunctive relief in labor dispute); 29 U.S.C. § 186(c) (B) (arbitration of union trust funds disputes); 28 U.S.C. § 2677 (arbitration of tort claims against the Government); 46 U.S.C. §§ 749, 786 (arbitration of admiralty claims against the Government); 41 U.S.C. § 113(e) (arbitration of war contracts claims).

See Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 412 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).[7] There is nothing peculiarily esoteric about whether Fallick's alleged misappropriation was "willful and malicious" under section 17 (a) (2) of the Bankruptcy Act (assuming that the arbitrator finds any misappropriation in the first place).

■ As to the policy argument, we have no doubt that the Bankruptcy Act expresses a strong legislative desire that deserving debtors be allowed to get a fresh start. If an agreement to arbitrate a pre-bankruptcy debt were necessarily inconsistent with that congressional purpose, that would justify enjoining the arbitration. A strong suspicion that an arbitrator would ignore the Act and thwart the purpose of discharging debtors might arguably justify intervention, but we have no such belief generally and there is nothing in this record to support it specifically. We agree, as the dissent points out, that an advance agreement to waive the benefits of the Act would be void. But this is not that case. The agreement here affects only the forum in which a right under the Act can be asserted, and we can find nothing in the Act that grants the bankrupt an absolute right to choice of forum for determination of questions of dischargeability. Indeed, as indicated above, the practice approved by precedent has been that that issue is usually litigated where the bankrupt's creditor decides to bring suit. Thus, this is not a case like Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), in which the Supreme Court relied heavily on a non-waiver provision in the Securities Act of 1933, which it construed as forbidding bargaining away of any rights under the Act, including choice of forum. See also Boyd v. Grand Trunk W. R. R., 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949) (per curiam). The Bankruptcy Act does have a section dealing with arbitration of controversies "arising in the settlement of the estate," subject to the discretion of the court to allow it;[8] If anything, the section evinces a receptivity to arbitration, although it apparently envisages some review—albeit severely limited—of the award. Moreover, there are cases in which arbitration of a dispute has been compelled by the bankruptcy court even when the trustee or debtor in possession has opposed it.[9] Nor does the fact that a right under a federal statute is indirectly involved necessarily make arbitration inappropriate. In United States for Use of Capolino Sons, Inc. v. Electronic & Missile Facilities, Inc., 364 F.2d 705 (2d Cir. 1966), arbitration was ordered on a claim under the Miller Act;[10] in Evans v. Hudson Coal Co., 165 F.2d 970 (3d Cir. 1948), arbitration was approved for a claim under the Fair Labor Standards Act.[11]

7. See also Marcy Lee Mfg. Co. v. Cortley Fabrics Co., 354 F.2d 42 (2d Cir. 1965) (per curiam) (liability for sale of highly flammable fabric to dressmaker); World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2d Cir. 1965) (waiver of rights under arbitration clause).

8. Section 26 of the Act, 11 U.S.C. § 49, provides:
(a) The receiver or trustee may, pursuant to the direction of the court, submit to arbitration any controversy arising in the settlement of the estate.
(b) Three arbitrators shall be chosen by mutual consent, or one by the receiver or trustee, one by the other party to the controversy, and the third by the two so chosen or, if they fail to agree in five days after their appointment, the court shall appoint the third arbitrator.

(c) The written finding of the arbitrators or of a majority of them as to the issues presented may be filed in court and *shall have like force and effect as the verdict of a jury.* (Emphasis added.)

9. Schilling v. Canadian Foreign S.S. Co., 190 F.Supp. 462 (S.D.N.Y.1961); In re Grain Prods. Corp., 20 F.Supp. 134 (S.D. N.Y.1937).

10. See also Moseley v. Electronic & Missile Facilities, Inc., 374 U.S. 167, 83 S.Ct. 1815, 10 L.Ed.2d 818 (1963).

11. See also Wilko v. Swan, 346 U.S. 427, 435 n. 21, 74 S.Ct. 182, 98 L.Ed. 168 (1953); Cavicchi v. Mohawk Mfg. Co., 34 F.Supp. 852 (S.D.N.Y.1940), giving estoppel effect to a confirmed arbitration award that decided questions of patent infringement between the parties; Mo-

The issue here is actually part of a larger problem—whether questions of dischargeability should be decided usually (or only) in the bankruptcy court because the present system of resolving them primarily in the state courts allows abuse by unscrupulous creditors. See Brendes & Schwartz, Schlockmeister's Jubilee: Bankruptcy for the Poor, 40 Ref.J. 69 (1966). It may well be that Congress should remedy this state of affairs,[12] but until it does, arbitration of the issue of dischargeability with its speedy and economical procedures seems no less appropriate than litigation in a state court. That harassment of debtors on discharged debts occurs we would not deny, nor would we be narrow in exercising our jurisdiction to prevent it. But here we have two partners of presumably equal bargaining power who agreed to arbitration, a claimant who attempted to use the state courts but was forced to arbitration by the person now objecting to it, no misunderstanding by the discharged bankrupt of his right to assert the discharge as a defense, and adequate legal representation possible and apparently available under the aegis of a respected arbitration association, whose rules allow a full record to be made.[13] Surely there could not be a less appealing occasion for singling out arbitration for special treatment by announcing an inflexible rule that the issue of dischargeability may never be decided in that forum. We need not concern ourselves now with cases in which the facts reveal the

possibility of harassment or inequity; e. g., if a loan company followed a practice of including arbitration clauses in its loan agreements and then proceeding against discharged debtors. The opinion of the district court in this case indicates an awareness of its power to intervene in an appropriate situation; it concluded that this was not one, and we find no abuse of discretion.

The only other issues raised by the parties relate to the dischargeability of Kehr's claim against Fallick, which in view of the above we will not decide. Accordingly, we affirm the order of the district court.

FRIENDLY, Circuit Judge (dissenting):

I cannot believe that when Fallick and Kehr included in their partnership agreement a general provision "that should any controversy arise between them which cannot be amicably resolved, they shall submit to the judgment of the American Arbitration Society whose opinion shall be binding as any court of jurisdiction," they meant to confide the legal issue whether a particular claim had been discharged in the bankruptcy of one of them to the unreviewable decision of an arbitrator—possibly without knowledge of law and free in any event to "fashion the law to fit the facts" before him. Matter of Exercycle Corp. (Maratta), 9 N.Y.2d 329, 336, 214 N.Y.S.2d 353, 357–358, 174 N.E.2d 463, 466 (1961). But even if we assume the contrary, I can think of no

hawk Mfg. Co. v. Cavicchi, 281 N.Y. 629, 22 N.E.2d 179 (memorandum decision), remittitur amended, 281 N.Y. 669, 22 N.E.2d 763, appeal dismissed for want of a substantial federal question, 308 U.S. 522, 60 S.Ct. 294, 84 L.Ed. 442 (1939); Saucy Susan Prods., Inc. v. Allied Old English, Inc., 200 F.Supp. 724 (S.D.N.Y. 1961) (trade mark infringement). But see Leesona Corp. v. Cotwool Mfg. Corp., 204 F.Supp. 141 (W.D.S.C.1962) (alternative holding), aff'd on other grounds, 315 F.2d 538 (4th Cir. 1963); cf. Zip Mfg. Co. v. Pep Mfg. Co., 44 F.2d 184 (D.Del.1930) (interpreting United States Arbitration Act).

12. See note 3 supra.

13. Record, p. 90. We do not close the door to a renewed application, based on that record, to the bankruptcy court (after the arbitration award is rendered) to demonstrate the justification for an injunction against enforcing it. We need not decide now what test of review should then be applied for this unusual situation; we need decide only that we will not now adopt a rule of law that requires the arbitration proceedings to be enjoined, regardless of the facts of the particular case.

course more "unusual" than permitting what is perhaps the most important objective of an individual bankruptcy, provided in some form by "every bankruptcy statute enacted in the United States," 1 Collier, Bankruptcy ¶ 14.01 [1] (1966 ed.), to be determined in that fashion. Remitting the bankrupt to the unreviewable decision of an arbitrator on the effect of his discharge is even worse than leaving him to a justice of the peace or a city court, State Fin. Co. v. Morrow, 216 F.2d 676 (10 Cir. 1954); Personal Industrial Loan Corp. v. Forgay, 240 F.2d 18 (10 Cir. 1956), cert. denied, 354 U.S. 922, 77 S.Ct. 1380, 1 L.Ed.2d 1436 (1957), whose decision, at least in theory, is subject to review by the state court hierarchy and ultimately by the Supreme Court. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), is decidedly in point; the non-waiver provision of the Securities Act there applied to ban enforcement of an agreement to arbitrate has its analogue in the settled principle that an advance agreement to waive the benefit of a discharge is wholly void. Federal Nat'l Bank v. Koppel, 253 Mass. 157, 148 N.E. 379, 40 A.L.R. 1443 (1925); In re Weitzen, 3 F.Supp. 698 (S.D.N.Y.1933). It is as true here as there that Congress did not intend the extent of the protection it had afforded under a federal statute not permitting advance waiver to be determined by "arbitrators without judicial instruction on the law." 346 U.S. at 436, 74 S.Ct. at 187.

While leaving the door open to a renewed application for an injunction on some yet undetermined basis after the supposedly conclusive award may be better than nothing, it is not good enough. Under the rules of the American Arbitration Association the arbitrator is not required to make detailed findings and even the existence of a stenographic record hinges on a request of a party who must then pay its cost unless the other orders one. While a similar possibility, of allowing the arbitrators to pass upon fact or common law questions but reserving the claim under the Securities Act

for decision by the district court, was obviously available in the case under advisement in Wilko v. Swan, the Court wisely declined to complicate matters in that way.

With all deference I find my brothers' enthusiasm for arbitration in this context strongly reminiscent of the opinion of the majority in Wilko, 201 F.2d 439 (2 Cir. 1953), which the Supreme Court reversed. I subscribe to what Judge Clark said in dissent, 201 F.2d at 445:

"Commercial arbitration has been highly successful in bringing a businessman's adjudication to business questions. But it would be vastly unfortunate if it became usable as a device to blunt or break social legislation."

That the discharge in bankruptcy is an old friend should not blunt our recognition that it is "social legislation" of the greatest consequence. I must therefore respectfully dissent.