**COMPANIA MARITIMA SAN BASILIO, S.A., as Owners of the S.S. EURYTAN, Petitioner,**

v.

**CZARNIKOW–RIONDA COMPANY, Charterers, Respondent.**

United States District Court
S. D. New York.

Dec. 7, 1964.

Poles, Tublin & Patestides, New York City, for petitioner, John G. Poles, New York City, of counsel.

McHugh & Leonard, New York City, for respondent, Martin J. McHugh, New York City, of counsel.

WEINFELD, District Judge.

The respondent chartered petitioner's vessel, the S.S. Eurytan, took on 8400 tons of sugar at a foreign port, and proceeded to New York Harbor. On November 27th, the day before the ship's arrival, the petitioner was advised that her discharge would not commence until at least December 7th due to overcrowded pier conditions.[1] Petitioner, contending that a failure of respondent to start discharge operations upon the vessel's arrival at port would constitute a breach of the charter party, forthwith and even before her arrival invoked the arbitration machinery contained in their agreement.[2] On November 27th it advised the respondent of the appointment of its arbitrator, demanded that respondent designate its arbitrator not later than 4 P.M. of that day, and upon its failure to do so, commenced this proceeding at 6 P.M. of the same day by an order to show cause.

The relief sought is the acceleration of the arbitration by (1) the appointment of respondent's arbitrator by December 2nd; (2) the designation of the third arbitrator by December 3rd; and (3) the commencement of the arbitration by December 4th.

Upon the facts presented and after hearing counsel representing the respective parties, I find no justification for the extraordinary timetable demanded by petitioner which would contract the normal

---

1. The condition is attributable, it is asserted, to a longshoremen's strike which may commence on December 20th, when a Taft-Hartley 80-day injunction expires.

2. "Arbitration. * * * Either party hereto may call for such arbitration by service upon the other, wherever he may be found, of a written notice specifying * * * the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon the first moving party within twenty days of the service of such first notice, *or such lesser time as may be mutually agreed or fixed by a court of maritime jurisdiction,* appoint its arbitrator to arbitrate the dispute of differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person, with precisely the same force and effect as if said second arbitrator had been appointed by the other party." [Italics supplied.]

twenty-day period within which the respondent may designate its arbitrator.

The Eurytan arrived in New York Harbor on Saturday, November 28th, and as of the date of the argument of this motion it is not denied that respondent failed to issue docking orders. Its stated reason is that the purchaser of the sugar shipment was unable to or refused to accept delivery of the full cargo at the normal rate of unloading because of lack of space in the refining storage facilities. The purchaser's daily refining capacity is 625 tons and it has indicated readiness to receive unloading at a greater daily rate commencing December 7th.

Respondent, however, denies that its failure to commence unloading upon arrival constitutes a breach of the terms of the charter party. Whether or not it does is not a matter for determination in this proceeding, but rather in the arbitration. Undoubtedly a dispute exists, but the issue before the Court is whether the circumstances require that the arbitration be accelerated.

The respondent contends that if the vessel had been moved into the discharge berth upon arrival or prior to December 7th and unloaded at the rate of 625 tons per day, unnecessary wharfage fees would be imposed upon the shipowner, the petitioner. In addition, it urges that since the vessel arrived on Saturday, November 28th, free time (lay days) did not commence until November 30th, and calculated at the stipulated rate of 1500 tons per day, free time allowances would not, in any event, expire until Monday, December 7th, the date when purchaser would be ready to receive discharge of the sugar at a greater rate than its daily refining capacity; that if the vessel were moved into the discharge berth then, and at this port's capacity discharge rate (2200 tons), the entire cargo would be delivered by December 11th. In this circumstance respondent contends that at most it may be liable for demurrage at the rate of $800 per day for four days, whereas petitioner urges that in effect its vessel is being used as a floating warehouse without proper compensation. The respondent asserts that the demurrage rate of $800 was deliberately set by the shipowner so that in turn despatch payment by the owner would be limited to $400, but that the prospect of a longshoremen's strike on December 20th has led the shipowner to contend for greater damages than at the demurrage rate—this appears to be the hard core of the controversy. Thus, what really is in dispute is the question of damages—a common controversy between business interests where a breach of an agreement is claimed. There is no reason why this simple issue cannot be resolved after the respondent has had the normal twenty-day period to appoint its arbitrator. In fact, it seems to this Court that after the event, whenever full delivery has been made, the arbitrators would be in a better position to determine the dispute and the issue of damages. No contention is made that the respondent is unable to meet any award that may be granted. Finally, commencement of the arbitration will not unload the ship.

The motion is denied.