WORLD BRILLIANCE CORPORATION,
Petitioner-Appellee,

v.

BETHLEHEM STEEL COMPANY,
Appellant.

No. 195, Docket 29142.

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1964.

Decided March 2, 1965.

Arthur M. Becker, New York City and Washington, D. C. (Nixon, Mudge, Rose, Guthrie & Alexander, New York City, of counsel), for petitioner-appellee.

Cravath, Swaine & Moore, New York City (Allen F. Maulsby, Harry H. Voigt, Robert G. Fisher, New York City, of counsel), for appellant.

Before SWAN, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge:

On August 15, 1956, Bethlehem Steel Company entered into a contract, later assigned by the other party to World Brilliance Corporation, to build the vessel *Princess Sophie*. The contract guaranteed World against defects discovered within six months after delivery of the vessel, and it provided for arbitration of "any dispute or difference arising between the parties * * * as to any matter or thing arising out of or relating to" the contract. The vessel was delivered on May 18, 1959. World reported numerous alleged defects to Bethlehem within the next six months, but most of these were settled without resort to arbitration. As for the remaining alleged defects, first reported on July 27, 1959, the parties are in almost total disagreement about the way in which World's complaints were handled. It is clear, however, that World made a demand for arbitration on April 5, 1962, and that Bethlehem refused to participate in the selection of the neutral member of the panel.

On April 8, 1964, World petitioned the United States District Court for the Southern District of New York pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, asking for an order compelling Bethlehem to proceed to arbitration according to the terms of the contract. The petition gave World's version of the dealings between the parties concerning the unresolved claims under the six months' guaranty clause of the contract. Bethlehem filed an answer which, insofar as is pertinent here, alleged that World was guilty of laches in bringing the petition and also had waived its rights under the arbitration clause. The allegations were supported by affidavits. Bethlehem demanded a jury trial in connection with these defenses.

Judge Cooper, in two memorandum decisions, ruled that the issue of laches was to be decided by the court rather than by a jury, that the facts pertaining to the issue were "hotly contested" by the parties, and that Bethlehem had not sustained its burden of proving that World unreasonably and prejudicially delayed in bringing the petition. Judge Cooper also ruled, by implication, that the issue of waiver was to be decided by the arbitrators rather than by the court. Consequently, he ordered Bethlehem to proceed to arbitration. Bethlehem appeals from this order, arguing that it was entitled to a jury trial on the issues of laches and waiver, or, alternatively, that at least it was entitled to a hearing before the judge where it would have opportunities to present oral testimony

on its behalf and to cross-examine World's witnesses with reference to these issues.

■ Our first inquiry is directed to whether the issue of waiver was correctly left to the arbitrators, or whether it should have been decided by the district court.

The proper approach to this question has been charted with admirable precision by Judge Medina in Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960) (hereinafter cited as Robert Lawrence). In that case the district court had implicitly ruled that under the Federal Arbitration Act a defense of fraud in the inducement should be decided by the court rather than by the arbitrators. In reversing this ruling Judge Medina said:

> "[I]t would seem to be necessary to answer the following questions before we can decide to affirm or reverse the order appealed from: (1) is there anything in the Arbitration Act or elsewhere to prevent the parties from making a binding agreement to arbitrate * * * a dispute that there had been fraud in the inception of the contract; (2) is the exception of Section 2, 'save upon such grounds as exist at law or in equity for the revocation of any contract' applicable * * *; and (4) is the arbitration clause broad enough to cover the charge of fraud." Id. at 409.

Taking these questions in reverse order, we hold that the arbitration clause in the present case was clearly broad enough to cover the defense of waiver. As Judge Medina said of the arbitration clause in Robert Lawrence, supra, at 412, "[i]t would be hard to imagine an arbitration clause having greater scope than the one before us." See In the Matter of Kinoshita & Co., 287 F.2d 951, 953 (2 Cir. 1961), in which Judge Medina ruled that an arbitration clause very similar to ours would easily encompass a dispute over fraud in the inducement. Moreover,

"we fail to perceive any rational basis for thinking that the issue is of such a character that only the courts can resolve it." Robert Lawrence, supra, 271 F.2d at 412. If the parties would entrust to arbitrators the defense of fraud in the inducement, they would also entrust to arbitrators the defense of waiver, which is not a bit more "legalistic."

■ Furthermore, we hold that the exception in Section 2 of the Act, which makes a commercial arbitration agreement valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract," is not applicable to the defense of waiver. "Revocation" does not, in this setting, refer to annulment by the parties themselves of an otherwise valid and enforceable contract. It applies only to cases in which the courts will step in and rescind the agreement, for reasons such as fraud, duress, or undue influence. Cf. Robert Lawrence, supra, at 410–411.

■ Finally, we hold that nothing in the Act prevents the parties from making a binding agreement to arbitrate the defense of waiver. Section 4 of the Act provides:

> "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. * * * Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, * * demand a jury trial of such issue * * *."

Bethlehem argues that these provisions apply to the defense of waiver, because waiver "un-makes" the arbitration agreement or constitutes a "failure, neglect, or refusal" by the petitioner (World) to perform the same.

The claim that a defense of waiver raises an issue relating to "the making of the arbitration agreement" stretches the language of the statute beyond tolerable limits. Cf. Robert Lawrence, supra, at 411. Compare El Hoss Eng'r

& Transp. Co. v. American Independent Oil Co., 289 F.2d 346 (2 Cir.), cert. denied, 368 U.S. 837, 82 S.Ct. 51, 7 L.Ed.2d 38 (1961). As for the phrase "failure, neglect, or refusal to perform the same," its meaning is clarified by the opening words of Section 4:

> "A party aggrieved by the alleged failure, neglect, or refusal *of another* to arbitrate under a written agreement for arbitration may petition any United States district court * * * for an order directing that such arbitration proceed in the manner provided for in such agreement." (Emphasis supplied.)

By repeating the words "failure, neglect, or refusal" in the clauses, quoted above, providing for a judicial disposition of certain issues, Congress intimated that it was only the failure "of another," the respondent (Bethlehem), which would be subject to adjudication. RFC v. Harrisons & Crosfield, Ltd., 204 F.2d 366, 368, 37 A.L.R.2d 1117 (2 Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953). Here, the failure to arbitrate, alleged defensively by the respondent (Bethlehem), was the failure of the petitioner (World) itself.

■ Nothing else in Section 4, or elsewhere in the Act, expressly bars enforcement of an agreement to arbitrate the defense of waiver in a suit brought under Section 4. Nor should such a bar be inferred on any but the strongest grounds. As Judge Medina stated in Robert Lawrence, supra, 271 F.2d at 410:

> "[A]ny doubts as to the construction of the Act ought to be resolved in line with its liberal policy of promoting arbitration both to accord with the original intention of the parties ['i. e. a speedy and relatively inexpensive trial before commercial specialists'] and to help ease the current congestion of court calendars."

It is true that there are cases in this circuit which look the other way on the problem before us: Farr & Co. v. Cia.

Intercontinental de Nav. de Cuba, 243 F.2d 342, 348 (2 Cir. 1957); Nortuna Shipping Co. v. Isbrandtsen Co., 231 F.2d 528 (2 Cir.), cert. denied, 351 U.S. 964, 76 S.Ct. 1028, 100 L.Ed. 1484 (1956). However, in the former case the arbitration agreement was narrower than ours, and in neither case was the question of who should determine the defense of waiver brought to the court's attention. Much more indicative of current attitudes regarding the arbitrability of so-called "procedural issues," in disputes affecting commerce, are three cases arising under Section 301 of the Labor-Management Relations Act which were decided within the last two years: John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 555–559, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Rochester Tel. Corp. v. Communication Workers of America, 340 F.2d 237 (2 Cir. 1965); Carey v. General Elec. Co., 315 F.2d 499, 501–504 (2 Cir. 1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964). In each case the procedural issue was sent to the arbitrators, despite strong objections by one of the parties.

■ Our second inquiry is directed to whether the issue of laches should have been determined by a jury or judge after a full hearing with opportunities for oral testimony and cross-examination, or whether the issue was properly decided by the district court on the motion papers alone.[1]

Section 6 of the Act provides: "Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." The only express provisions to the contrary are in Section 4, as quoted above. We have already held that these provisions do not apply to the issue of waiver, and for the same reasons we now hold that they do not apply to the issue of laches. This result accords with the policy of Section 6, which is to expedite judicial treatment of

---

1. Because neither party argues that the issue of laches should have been left to the arbitrators, we find it unnecessary to examine the authorities on this question.

matters pertaining to arbitration. S. Rep.No.536, 68th Cong., 1st Sess. (1924); H.R.Rep.No.96, 68th Cong., 1st Sess. (1924). Such a policy would hardly be advanced by affording a jury trial on the issue of laches, an issue traditionally decided by a judge, sitting in equity without a jury.[2]

Since Section 4 of the Act does not apply to the defense of laches, the issue is to be heard as "motions" are, rather than by "trial." Motions may be decided wholly on the papers, and usually are, rather than after oral examination and cross-examination of witnesses. See Fed.R.Civ.P. 56. In view of the policy of Section 6, described above, there was particular justification for choosing to follow such a simplified procedure in the present case. A district court may, in its own discretion, order a trial-like hearing of the issue of laches, but under the Federal Arbitration Act it is not an abuse of discretion for a district court, as here, to decline to do so.

Affirmed.

**2.** The original version of Section 4 did not, as Bethlehem contends, provide for a jury trial of issues exclusively equitable.