**LOWRY & CO., Inc., Libelant,**

v.

**S.S. LE MOYNE D'IBERVILLE, her engines, boilers, etc. and Compagnie General Transatlantique A'Paris, Respondent.**

64 Ad. 1362.

United States District Court
S. D. New York.

March 29, 1966.

Hill, Rivkins, Louis & Warburton, New York City, for libelant; Joseph T. Mc-Gowan, Clare E. Walker, New York City, of counsel.

Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for respondent; Edwin Longcope, New York City, of counsel.

WEINFELD, District Judge.

Libelant, the transferee of bills of lading covering sugar cargoes shipped on respondent's vessel, filed this libel to recover damages to the shipments, which were carried from French ports to New York, Philadelphia and Baltimore.

The respondent moves to dismiss the libel or alternatively to direct libelant to submit its claim to arbitration. The basis of the motion is an arbitration clause in the charter party entered into between respondent and Amerop Commodities Corporation, from whom libelant acquired the bills of lading.

On September 17, 1963 respondent, a French corporation, entered into the charter party at Paris with Amerop for the carriage of sugar from French to American ports upon respondent's vessels, including the one named herein. The charter party contained a provision by way of addendum—"Clauses 16 to 33 both included as attached as well as * * * centrocon strike and arbitration clauses to be deemed fully incorporated in this charter party and form part of same." The centrocon clause was not expressly set forth, but the parties are in agreement as to its terms. It provides,[1] among other matters, that "all disputes * * * arising out of this contract shall * * * be referred to the final arbitrament of two Arbitrators carrying

on business in London * * *." Clause 29 provides: "General average and arbitration, if any, to be settled in Paris."

The respondent, upon receipt of the shipments of sugar from the shipper Amerop, issued the bills of lading which, as already noted, were negotiated in due course to libelant. These bills of lading provide: "All conditions and exceptions as per charter party dated Paris 17th September 1963."

The movant-respondent contends that libelant was bound by the centrocon clause, and that by its failure to give notice of claim and to appoint its arbitrator within three months after final discharge, as required thereunder, it waived its claim. The libelant resists on five grounds.

First, it urges that no valid arbitration provision is contained in the charter party because clause 29, which provides that "arbitration, if any, to be settled in Paris," is in conflict with and supersedes the centrocon clause. Emphasizing the phrase, "if any," libelant argues it indicates the parties did not agree to arbitrate, but merely decided that if they did so agree in the future, then the place of arbitration would be Paris; further, it urges that arbitration in Paris is inconsistent with the centrocon clause requirement for arbitration by London merchants. These arguments disregard the fact that both clause 29 and the centrocon clause are incorporated into the charter by force of a single provision, which reads: "Clauses 16 to 33 both included as attached as well as * * * centrocon strike and arbitration clauses to be deemed fully incorporated in this charter party and form part of same." Libelant advances no reason why, with both clauses explicitly incorporated by

---

1. The centrocon clause in full reads: "All disputes from time to time arising out of this contract shall, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be Members of the Baltic and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant's Arbitrator appointed within three months of final discharge and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred."

398

this provision, clause 29 should be given effect whereas the centrocon clause should not. The clauses are not in conflict. Under the centrocon clause the parties agreed upon arbitration, the arbitrators to be London merchants, and under clause 29, they set the situs of arbitration, "if any," in Paris, where the parties entered into the charter party and where the shipowner had its principal office. Arbitration in Paris is not inconsistent with the centrocon provision for arbitration by London merchants; travel from London to Paris by air is a short flight and presents no difficulty. So read the clauses are consistent with each other. Accordingly, the court holds that the charter party contains an effective arbitration provision.

Even so, libelant next contends that the arbitration provision binds only the signatories to the charter party—the shipowner, the respondent herein, and the charterer. Since it was not a signatory, libelant argues it cannot be required to arbitrate. It is true that a charter party provision for arbitration of disputes which is restricted to the immediate parties or limited to disputes "between the * * * Owners and the Charterers," as was the case in Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,[2] so heavily relied upon by libelant, does not bind any but the named persons. On the other hand, an agreement to arbitrate all "disputes * * *

arising out of this charter" binds not only the original parties, but also all those who subsequently consent to be bound by its terms.[3] The centrocon clause, with its provision that "all disputes * * * arising out of this contract shall * * * be referred to" arbitration, is broad enough to bind libelant as well as the original parties to the charter party, provided it was effectively incorporated into the bills of lading held by the libelant.[4]

Libelant, however, further contends that the language in the bills of lading—"all conditions and exceptions as per charter party dated Paris 17th September 1963"—is not sufficiently clear and unambiguous to incorporate the charter party's provision for arbitration. It emphasizes the absence of the words "incorporated by reference" or language of similar import.[5] Undoubtedly such precision would have been more desirable. But the court concludes that the reference in the bills of lading is sufficiently explicit to adopt the conditions of the charter party. It is not necessary, in order to incorporate by reference the terms of another document, that such purpose be stated in haec verba or that any particular language be used. "[A]rbitration clauses are to be treated like any other contract provisions,"[6] and it is settled doctrine that a reference in a contract to another writing, sufficiently described, incorporates that writing.[7] Indeed, the very language used here—"as per charter party"—has previously been

---

2. 351 F.2d 503 (2d Cir. 1965). Cf. Chilean Nitrate Sales Corp. v. The Nortuna, 128 F.Supp. 938, 940 (S.D.N.Y.1955).

3. Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687 (2d Cir. 1952); Lowry & Co. v. S. S. Nadir, 223 F.Supp. 871, 873–874 (S.D.N.Y.1963).

4. See Import Export Steel Corp. v. Mississippi Valley Barge Line Co., 351 F.2d 503, 506 (2d Cir. 1965); Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687 (2d Cir. 1952); Lowry & Co. v. S. S. Nadir, 223 F.Supp. 871, 873 (S.D.N.Y.1963); Cia. Naviera Somelga, S.A. v. M. Golodetz & Co., 189 F.Supp. 90, 96 (D.Md. 1960).

5. Compare Import Export Steel Corp. v. Mississippi Valley Barge Line Co., 351 F. 2d 503, 506 (2d Cir. 1965) (dictum).

6. Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687, 689 (2d Cir. 1952).

7. Ehret Magnesia Mfg. Co. v. Gothwaite, 80 U.S.App.D.C. 127, 149 F.2d 829 (1945); United States Fid. & Guar. Co. v. Long, 214 F.Supp. 307, 314 (D.Or. 1963); Raeuber v. Central Nat'l Bank, 112 F.Supp. 865, 868 (N.D.Ohio 1953); Jones v. Cunard S. S. Co., 238 App.Div. 172, 263 N.Y.S. 769, 771 (2d Dep't 1933).

held sufficiently explicit to incorporate a charter party into a bill of lading.[8]

■■ Next libelant urges that the three-month limitation period contained in the centrocon clause is in conflict with the one-year limitation in the Carriage of Goods by Sea Act,[9] and accordingly should be declared void as contrary to public policy, or even if not void, that upon the facts the statutory provision controls.

Libelant, on December 8, 1963, within three months after final discharge of the cargo, notified respondent of its damage claim, but failed to appoint its arbitrator within that period, as required by the centrocon clause. In fact, libelant took no other action until December 8, 1964, nearly one year after cargo discharge, when it commenced the instant suit. If the three-month period controls, libelant, by failure to act within that period waived not only its remedy of arbitration, but its very claim for damages.[10] Libelant, however, advances two reasons why the three-month period should be held inapplicable. The first is that the Carriage of Goods by Sea Act *ex proprio vigore* invalidates the three-month limitation period of the centrocon clause, if not the clause itself. This argument has previously been made to this court; it was rejected then [11] and is again rejected now. Libelant's second argument, though, is of greater weight. Its basis is that the incorporation of the Carriage of Goods by Sea Act, with its one-year limitation provision, into the bill of lading, which also incorporates by reference the centrocon clause with its ninety-day limitation, creates an ambiguity as to the applicable limitation period. This seeming conflict is not necessarily irreconcilable and there is a basis for a plausible interpretation; [12] in any event, the matter is one of interpretation. The court having found the existence of a valid arbitration provision, all other issues, including but not limited to interpretation and limitations, are for the arbitrators and not the court.[13]

---

8. See O'Connell v. One Thousand & Two Bales of Sisal Hemp, 75 F. 408, 409 (S.D. Ala.1896), and Gronstadt v. Withoff, 21 F. 253 (S.D.N.Y.1884), both cited with approval in Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687, 688–689 (2d Cir. 1952).

9. See 46 U.S.C. § 1303(6).

10. See Government of Indonesia v. The General San Martin, 114 F.Supp. 289 (S. D.N.Y.1953). Accord, Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, 239 F.2d 689, 694 (4th Cir. 1956).

11. See Government of Indonesia v. The General San Martin, 114 F.Supp. 289, 290 (S.D.N.Y.1953). Cf. J. Aron & Co. v. The Askvin, 267 F.2d 276 (2d Cir. 1959).

12. The parties might well have intended three months to be the period within which any claim must be asserted and the demandant's arbitrator appointed, and one year the time within which to commence suit to compel arbitration should the claim be rejected. See also J. Aron & Co. v. The Askvin, 267 F.2d 276 (2d Cir. 1959).

13. See United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960) (construction of contract) ; World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362, 364–365 (2d Cir. 1965) (waiver of right to arbitration) ; Compania Maritima San Basilio, S.A. v. Czarnikow-Rionda Co., 236 F.Supp. 427, 428 (S.D.N.Y.1964) (determination of whether contract breach had occurred) ; International Union of Elec. Workers v. Westinghouse Elec. Corp., 218 F.Supp. 82, 84 (S.D.N.Y. 1963), aff'd on opinion below, 326 F.2d 758 (2d Cir. 1964) (merits of labor grievance) ; Application of Reconstruction Finance Corp., 106 F.Supp. 358, 361–362 (S.D.N.Y.1952), aff'd sub nom. Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd., 204 F.2d 366, 369–370, 37 A.L.R.2d 1117 (2d Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953) (limitations and laches). Cf. United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) (construction of contract) ; South East Atlantic Shipping Ltd. v. Garnac Grain Co., 356 F.2d 189 (2d Cir. 1966) (fact findings, construction of contract, and interpretation of contract law) ; Marcy Lee Mfg. Co. v. Cortley Fabrics Co., 354 F.2d 42, 43 (2d Cir. 1965) (arbitrators may " 'fashion the law to fit the facts before them' ").

Finally, libelant, relying upon Sucrest Corp. v. Chimo Shipping Ltd., [14] contends that respondent waived its right to arbitration when, aware of libelant's claim, it failed to demand arbitration within the three-month period provided in the centrocon clause, assuming arguendo that the clause governs. The contention, as the court understands it, is that even though libelant failed to follow up the assertion of its claim by demanding arbitration and appointing its arbitrator, nonetheless respondent was required to do so and unless it did, it was foreclosed from that remedy. Apart from this court's doubt that a party is under an obligation to initiate proceedings when it asserts no claim, our Court of Appeals has recently held that an issue of waiver, such as is here presented, is to be decided by arbitrators rather than by the court.[15] Accordingly, the claim of waiver is also reserved for the arbitrators.

The motion to stay the present action pending arbitration is granted.

---

14. 236 F.Supp. 229 (S.D.N.Y.1964).

15. World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362, 364–365 (2d Cir. 1965).