In the Matter of the Arbitration under Voyage Charter of January 13, 1961 between TRAFALGAR SHIPPING CO., Ltd., Owner of the SS IONIAN IS-LANDER, Petitioner-Appellant,

v.

INTERNATIONAL MILLING COMPA-NY, Voyage Charterer of the SS Ionian Islander, Respondent-Appellee.

No. 487, Docket 31899.

United States Court of Appeals
Second Circuit.

Argued May 8, 1968.

Decided Oct. 2, 1968.

David P. Dawson, New York City, for petitioner-appellant.

Donald M. Burke, New York City (Zock, Petrie, Sheneman & Reid, New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This is an action to compel arbitration of a claim for hull damage allegedly sustained by the SS Ionian Islander, a cargo ship. The affidavits before the district court reveal the following chronology of events.

In early 1961 the vessel was under voyage charter from the petitioner-appellant Trafalgar Shipping Co., Ltd. (Trafalgar), its owner, to the respondent-appellee International Milling Co. (International). By the charter, International agreed to carry a cargo of wheat from Vancouver, British Columbia, to ports in Venezuela and agreed to use only discharge berths of sufficient depth to accommodate the draft of the vessel so that it would be "always afloat." The charter provided that any dispute which might arise between the parties would be submitted to arbitration in New York.[1]

On February 24, 1961 the vessel ran aground as it was entering a berth in the harbor of Puerto Cabello, Venezuela. From there it proceeded to the port of Maracaibo, Venezuela, where, between March 9 and 13, 1961, two bottom surveys were conducted on the vessel while it was afloat. Copies of the survey reports were forwarded to International. Although neither of these disclosed positive indications of damage, Trafalgar notified International by letter of March 17, 1961 that International would be held responsible for the incident.

During November, 1961, when the vessel was no longer under charter to International, it encountered in the Pacific several days of rough seas and gale force winds of a velocity sufficient to cause heavy weather damage. Trafalgar had the vessel dry-docked in the following month at Yokohama, Japan. Surveys below the waterline revealed shallow dents in the hull, and scrapes or streaks in the paint in the area of the keel. A portion of this damage was repaired. In July, 1963, the ship was again dry-docked at Yokohama, where new surveys were made. These confirmed the earlier damage reports and complete repairs were then effected.

In May, 1965, a Particular Average Statement was prepared at Trafalgar's request for the purpose of allocating the cost of repair between the two causes of the damage, and apportioning this among the hull underwriters of the vessel. The report attributed approximately $23,000 of damage to the grounding and $10,000 to the heavy weather incident. In November, 1965, Trafalgar notified International of its claim for reimbursement for the former amount. In April, 1966, International wrote to Trafalgar denying responsibility for the grounding and disclaiming liability. An effort was

1. The following arbitration provision was incorporated by reference in the Charter Party:
   "New York Produce Exchange Arbitration Clause: Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

made to settle the dispute but it was unsuccessful.

In August, 1966, Trafalgar demanded that the dispute be submitted to arbitration; it gave notice of its selection of an arbitrator and requested International to appoint one in accordance with the arbitration agreement but International refused.

In May, 1967, Trafalgar brought this suit in the district court to compel arbitration, 9 U.S.C. § 4.[2] International defended the action on the ground that Trafalgar's right to arbitrate was barred by laches. In support of this it submitted affidavits which purported to show that Trafalgar's long delay in asserting its claim had left International powerless to defend itself before the arbitrators, owing to the death or disappearance of witnesses to the grounding, the loss of evidence to show the cause of the damage to the vessel, and other difficulties.

The dispute in the district court centered about whether the issue of laches, when advanced in connection with a matter which the parties have agreed to arbitrate, is for the court to decide, or for the arbitrators. Both parties read the decision of this court in Reconstruction Finance Corp. v. Harrisons & Crosfield, 204 F.2d 366, 37 A.L.R.2d 1117 (2 Cir.), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953), as holding that the question must be decided by the court in connection with the motion to compel arbitration, but Trafalgar claimed that *Reconstruction Finance* was overruled by the Supreme Court in Prima Paint Corp. v. Flood & Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), although only by implication, and that laches could

therefore be decided only by the arbitrators.

Completely persuaded by its own argument, Trafalgar offered no explanation of its delay in seeking arbitration, and declined the opportunity to file affidavits countering those submitted by International. The district judge, however, rejected the argument based on *Prima Paint*, and, following the rule for which the parties agreed that *Reconstruction Finance* stood, found in favor of International and dismissed the action. We reverse, but for reasons different from those advanced by Trafalgar.

The district court understood this court's decision in *Reconstruction Finance* as holding that "laches in seeking arbitration is to be decided by the court, not by the arbitrators." Other district courts have similarly interpreted that case, e. g., In re Sociedad Armadora Aristomenis Panama, 244 F.Supp. 653 (S.D. N.Y.1965). But the judge who decided *Reconstruction Finance* in the district court, Application of Reconstruction Finance Corp., 106 F.Supp. 358 (S.D.N.Y. 1952), Judge Weinfeld, has cited this court's decision for the proposition that questions of laches and limitations are for the arbitrators, rather than for the court, Lowry & Co. v. S.S. LeMoyne D'Iberville, 253 F.Supp. 396, 399 n. 13 (S.D.N.Y.1966), appeal dismissed, 372 F. 2d 123 (2 Cir. 1967); and elsewhere it has been observed that the objective of the opinion was "to leave to the arbitrator the issue of delay in demanding arbitration," Note, 67 Harv.L.Rev. 510, 511 (1954).

This is the first time since *Reconstruction Finance* that we have been

2. The relevant portions of 9 U.S.C. § 4 are as follows:
   "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. * * * The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. * * *"

directly confronted with the question of whether laches is for the court or the arbitrators. Cf., World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362, 365 n. 1 (2 Cir. 1965). In answering it we consider the opinion in *Reconstruction Finance,* the purpose of the laches doctrine, and the objectives of the federal Arbitration Act, 9 U.S.C. §§ 1–13. In our view, all of these approaches lead to the conclusion that the issue of laches as it presents itself in this case is one for the arbitrators to decide.

The precise question in *Reconstruction Finance* was whether New York's six-year statute of limitations was a bar to the arbitration of a dispute which arose in 1942 concerning the obligation of one party to purchase insurance on the goods of another, because the demand for arbitration was not made until 1951. In the district court, Judge Weinfeld refused to pass on the issue, which he thought was for the arbitrators. Application of Reconstruction Finance Corp., supra, 106 F.Supp. at 361–362. On appeal Judge Frank, speaking for the majority, agreed, saying: "The effect of the limitations statute on the asserted obligation to obtain insurance will be determined by the arbitrators." Reconstruction Finance Corp. v. Harrisons & Crosfield, supra, 204 F.2d at 369.

■ The present case, involving a dispute in admiralty, necessarily involves laches, or equitable limitations, rather than the stricter measure of the statute of limitations. See 3 Knauth's Benedict on Admiralty, §§ 462–464 (1940). As Judge Weinfeld has noted, however, the holding in *Reconstruction Finance* applies equally whether laches or limitations is involved, Lowry & Co. v. S.S. Le Moyne D'Iberville, supra, 253 F.Supp. at 399 n. 13. We construe Judge Frank's decision to require that all questions of delay which relate to issues which the parties have agreed to submit to arbitration (there, the obligation to obtain insurance; here, the asserted breach of warranty) be resolved by the arbitrators, not the court.

The confusion which has resulted in applying *Reconstruction Finance* no doubt derives from the fact that Judge Frank did discuss limitations and laches in relation to the period of delay from the demand and refusal to arbitrate until the commencement of the action in the district court—in that case a rather short span of time—and from dictum in the opinion relating to cases of extreme delay and prejudice, 204 F.2d at 370, as well as from the dissent by Judge Clark. All of these factors combine to obscure somewhat the actual holding of the case.

While Judge Frank therefore did say that *some* questions of laches were for the court, and not the arbitrators, the opinion does not clearly identify these, or attempt to delineate between them and the issues which were held for the arbitrators alone. In our view the correct answer is that the court may consider only those questions of delay which relate to and affect issues which it is called upon to decide in connection with the motion under 9 U.S.C. § 4.

■■ The purpose of laches is simply to relieve a decision-making body of the duty to resolve, and to prevent one party from having to prove, issues as to which the relevant evidence has been lost due to the delay of the other party. The only issues which the court is authorized to consider on a motion to compel arbitration are ones which pertain to "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same," 9 U.S.C. § 4; Prima Paint Corp. v. Flood & Conklin, supra, 388 U.S. at 403–404, 87 S.Ct. 1801. If one of these issues is disputed before the court, and if one party claims that its ability to present proof in relation thereto has been prejudiced through the delay of the other, the court may consider whether it is fair to permit the dilatory party even to invoke its processes under the Act.

For example, if a party were to assert that the agreement for arbitration was procured through fraud or duress, raising a question as to its "making,"

see Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2 Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); Hellenic Lines, Ltd. v. Louis Dreyfus Corp., 372 F.2d 753 (2 Cir. 1967), the court might then consider whether evidence essential to the proof of this defense had, owing to the unexcused delay of the moving party, become unavailable, e. g., witnesses had died or could no longer be located, loss of necessary exhibits, etc. Ordinarily the fact that the parties are before the court indicates that one of them has failed, neglected or refused to arbitrate, so that it is difficult to imagine an issue presenting itself under this portion of the statute because it could only arise in a case where the respondent took the position that he had not failed, neglected or refused to arbitrate.[3] This follows the restricted interpretation and application of "failure, neglect, or refusal" adopted by this court in World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2 Cir. 1965). Because in the present case, none of the issues which we have mentioned is in dispute, there is no question of laches which the court should decide.

We hold that on a motion to compel arbitration a district court may consider only claims of laches which relate to issues which the court must decide. The arbitrators must resolve any such claims which relate to issues which the parties have agreed to submit to arbitration.

This conclusion is consistent with the policy of the Arbitration Act to eliminate the expense and delay of extended court proceedings preliminary to arbitration, see Prima Paint Corp. v. Flood & Conklin, supra, 388 U.S. at 404, 87 S.Ct. 1801; Joint Hearings on S. 1005 and H. R. 646 before the Subcommittees of the Committees on the Judiciary, 68th Cong., 1st Sess., pp. 6–7 (1924); Cohen

& Drayton, The New Federal Arbitration Law, 12 Va.L.Rev. 265, 269 (1926), evils which would surely be promoted by a rule which made all questions of laches for the court, especially where a full hearing is required, see Vega v. The Malula, 291 F.2d 415, 416 (5 Cir. 1961), and where, as here, an appeal is taken from the decision of the district court. Moreover, in our view, laches is not a technical legal issue which only a judge is competent to decide. Rather, in the often esoteric field of commercial dealings, and in admiralty, it would seem that the severity of prejudice suffered through delay, and the reasonableness of excuses offered by the dilatory party, the elements of laches, might be resolved better where resort is had to the expertise of the arbitrators. Cf., Cohen & Drayton, supra at 281.

■ Nor are we persuaded by the argument that arbitrators cannot objectively decide issues like laches because "their compensation corresponds to the volume of arbitration they perform." Prima Paint Corp. v. Flood & Conklin, supra, 388 U.S. at 416, 87 S.Ct. at 1812 (dissenting opinion). This assertion was evidently not appealing to a majority of the Supreme Court, and subsequently it has been discounted by one experienced in the field of arbitration. Coulson, Prima Paint: An Arbitration Milestone, 23 Bus.Law. 241, 246 (1967). The parties may always eliminate this possibility themselves by agreeing to an "express time limitation" for demanding arbitration, Reconstruction Finance Corp. v. Harrisons & Crosfield, supra, 204 F. Supp. at 370, or, by expressly providing that all issues of laches be submitted to the court. See Necchi S.P.A. v. Necchi Sewing Machine Sales Corp., 348 F.2d 693, 696–697 (2 Cir. 1965), cert. denied, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966). In any event, an arbitra-

3. The phrase "failure, neglect, or refusal" was included in the first line of 9 U.S.C. § 4, see supra note 2, primarily to assure that the remedy which Congress was affording would not be available before there had been a demand to ar-

bitrate and a refusal. We have construed the phrase narrowly as it is used elsewhere in the section, see World Brilliance Corp. v. Bethlehem Steel Co., 342 F.2d 362 (2 Cir. 1965).

tion award is subject to review in the courts for "misbehavior" of the arbitra- tors, 9 U.S.C. § 10, or "manifest disregard of the law," Saxis Steamship Co. v. Multifacs International Traders, Inc., 375 F.2d 577, 582 (2 Cir. 1967).

Our conclusion makes unnecessary an extended discussion of *Prima Paint*. That case did not involve a question of laches [4] and the opinion of the Supreme Court makes no reference, adverse or otherwise, to our decision in *Reconstruction Finance*. If anything, the Court's discussion of the purpose of the Arbitration Act supports our rule on laches. As the Court noted, "the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, *but not more so.*" 388 U.S. at 404 n. 12, 87 S.Ct. at 1806. (Emphasis added.) [5] To hold that an arbitration agreement, as an exception to the general rule, is immune from any challenge on the ground of laches, including the few which we have noted supra, "would be to elevate it over other forms of contract," 388 U.S. at 404 n. 12, 87 S.Ct. at 1806, contrary to the purpose of the Act. Clearly Congress did not intend this result. See H.Rep.No. 96, 68th Cong., 1st Sess. (1924) quoted in Kulukindis Ship- ping Co. v. Amtorg Trading Corp., 126 F.2d 978, 985 (2 Cir. 1952). We think that the rule we have announced strikes the proper balance.

Judgment reversed with instructions that the parties be ordered to proceed to arbitration.

LUMBARD, Chief Judge (dissenting):

I dissent for the reasons stated by Judge McLean in his opinion denying the motion to compel arbitration on the ground of laches.

In addition, it seems to me inappropriate and inadvisable to leave to the arbitrators the question of whether the party seeking arbitration has lost whatever rights it may have had by its own delay in asking for arbitration. One of the principal arguments for arbitration has always been its greater speed and the time and expense saved by summary resolution of differences without the delay which customarily attends the measured progress of judicial proceedings, particularly those in admiralty. Moreover, it is not likely that arbitrators can be altogether objective in deciding whether or not they ought to hear the merits. Once they have bitten into the enticing fruit of controversy, they are

---

4. Historically, as well as under the federal statute, the law has envisioned a distinction between the entire contract between the parties, on the one hand, and the arbitration clause of the contract on the other. See Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 409 (2 Cir. 1959), cert. dismissed 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). The issue in *Prima Paint* was whether a claim of fraud in the inducement of a contract containing an arbitration clause, as opposed to a claim of fraud in the inducement of only the agreement for arbitration, is to be resolved by the court, or referred to the arbitrators. This court, following its decision in Robert Lawrence Co. v. Devonshire Fabrics, Inc., supra, had decided that the matter was one for the arbitrators, because the arbitration clause in question was broad enough to encompass a claim of fraud in the inducement of the entire contract, and because there was no claim that the agreement to arbitrate itself was procured through fraud. 360 F.2d 315 (2 Cir. 1966). The Supreme Court affirmed.

5. At common law agreements for arbitration were as a practical matter revocable at the will of either party. The equity courts refused to recognize them out of fear that the arbitrators would encroach upon their jurisdiction. See generally, Kulukindis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978, 983–985 (2 Cir. 1942); S.Rep.No. 536, 68th Cong., 1st Sess., 2 (1924); Note, Commercial Arbitration in Federal Courts, 20 Vand.L. Rev. 607, 608–609 (1967). And admiralty courts simply lacked the power to grant specific performance. See Red Cross Line v. Atlantic Fruit Co., 264 U. S. 109, 123, 44 S.Ct. 274, 68 L.Ed. 582 (1924); Gilmore & Black, The Law of Admiralty, p. 37 (1957). To alleviate the situation, Congress passed the Arbitration Act in 1925, providing a remedy of specific performance in the federal courts.

not apt to stay the satisfying of their appetite after one bite. I believe that what the court does today is a disservice to more widespread use of arbitration as a useful means of settling controversies, as it tends to discourage the signing of agreements in advance of a possible dispute.

If there is any colorable defense to proceeding with arbitration, as there surely is here, a court ought to pass on that question.

I would affirm the order of the district court.