**FIRST NATIONAL BANK, LEXINGTON, TENNESSEE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 133–85C.**

United States Claims Court.

Aug. 5, 1987.

---

J. Alan Hanover and Stephen R. Leffler, Memphis, Tenn., for plaintiff.

Paul J. Ehlenbach, with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen, Director, and Thomas W. Peterson, Asst. Director, Washington, D.C., for defendant; Ronald E. Gottschalk, Dept. of Agriculture, of counsel.

## OPINION

SMITH, Chief Judge.

This case is before the court on cross-motions for summary judgment. The dispute centers upon defendant's refusal to pay additional interest to plaintiff under the terms of a Farmers Home Administration Loan Note Guarantee. Plaintiff claims it miscalculated the amount owed and that defendant is therefore obligated to pay an

additional sum. Defendant asserts that the amount sought is not recoverable for several reasons: (1) the pertinent regulation prohibits such recovery, (2) the Loan Agreement was not incorporated by reference into the Lender's Agreement, (3) the parties entered into an accord and satisfaction which bars plaintiff's recovery, and (4) assuming plaintiff can prove mutual mistake and that the regulation does not prohibit such a payment, plaintiff is only entitled to $42,719.37, not the $83,414.53 which it claims. For the reasons set forth below, the court grants Plaintiff's Motion for Summary Judgment and, accordingly, Defendant's Cross-Motion for Summary Judgment is denied.

### Facts

On July 31, 1980, plaintiff, First National Bank of Lexington, Tennessee ("plaintiff" or "FNB") a Tennessee corporation with its place of business in Lexington, Tennessee, purchased the guaranteed portion (ninety percent) of a loan in the amount of $1,000,000 made by Houghton National Bank ("Lender") to Northern Industrial Sales & Services, Inc. ("Borrower"). The loan purchase portion was fully guaranteed by the Farmers Home Administration ("FmHA"). Subsequently, plaintiff received the standard loan documents including: a copy of the Loan Note Guarantee, the Note evidencing the loan from Lender to Borrower, a copy of the Lender's Agreement, a copy of the Assignment Guarantee Agreement, and a copy of the Loan Agreement between Lender and Borrower. Plaintiff examined the aforesaid documents and determined that those documents conformed with plaintiff's understanding of the agreement and accepted the assignment of the loan.

Thereafter, plaintiff, Lender, and, the FmHA, agreed to Borrower's deferral of certain payments of principal and interest on the note from November, 1981, through April, 1982. However, it was also agreed that payments would resume in May, 1982. The last payment was received by plaintiff in February, 1982, which brought the loan current through October 26, 1981.

As a result of Borrower's default, plaintiff, on July 28, 1982, made demand upon Lender pursuant to the terms of the Assignment Guaranty Agreement to repurchase the guaranteed portion of the loan with interest. Upon declining to repurchase the guaranteed portion of the loan, Lender forwarded the matter to the FmHA for processing. Plaintiff made demand upon the FmHA on November 16, 1982, for payment in the amount of $1,064,045.90 with additional interest of $362.37 per day pending payoff.

The FmHA paid $896,705.87 for the outstanding principal and $189,896.51 for interest charges on or about January 19, 1983. This sum would appear to represent the exact amount of plaintiff's demand. Subsequently, a routine audit of plaintiff's books and records revealed that plaintiff had inadvertently used the wrong interest rate in its calculation of the guaranteed accrued interest in its original repurchase demand. During its original calculations, plaintiff failed to use the default provision of the Loan Agreement which provides in the event of a default for interest on the unpaid balance to accrue at the rate of twenty-five percent per annum. By letter dated September 20, 1984, FNB made a demand on the FmHA for an additional $83,414.53. The FmHA refused to pay the additional interest demanded and plaintiff filed its complaint on March 7, 1985. Defendant argues that (1) plaintiff cannot recover penalty interest under the terms of the applicable regulation; (2) the twenty-five percent default provision of the Loan Agreement was not incorporated by reference into the Lender's Agreement; (3) plaintiff surrendered the right to collect additional interest when it entered into an accord and satisfaction with FmHA; or, in the alternative, (4) even if the regulations and loan documents allow plaintiff to recover interest and plaintiff is able to show a mutual mistake of fact, plaintiff miscalculated the amount owed by using the wrong date of default and is only entitled to judgment in the amount of $42,719.37, not the amount claimed ($83,414.53). The Claims Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1491 (1982).

## Discussion

Summary judgment is appropriate only when there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *Weide v. United States*, 4 Cl.Ct. 432, 435 (1984), *aff'd*, 765 F.2d 157 (Fed.Cir.1985), *cert. denied*, 474 U.S. 822, 106 S.Ct. 74, 88 L.Ed.2d 61 (1985). Further, all doubts relative to material facts in issue for the purposes of ruling on a party's summary judgment motion must be resolved against the moving party. *South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982).

Plaintiff's Motion for Summary Judgment and Defendant's Response and Cross-Motion for Summary Judgment raise four primary issues; they will be dealt with seriatim.

I.  Whether the rate of interest applicable in the event of default is recoverable as liquidated damages or should be construed as a late payment charge and, therefore, not enforceable?

■ In determining whether this regulation bars plaintiff's recovery the court must determine what the regulation means by the term "late payment charges."

Title 7, Section 1980.22 of the Code of Federal Regulations ("Charges and fees by lender"), provides:

(a) Routine charges and fees. The lender may establish the charges and fees for the loan, provided they are the same as those charged other applicants for similar types of transactions.

(b) Late payment charges. Late payment charges will not be covered by the Loan Note Guarantee. Such charges may not be added to the principal and interest due under any guaranteed note. Late payment charges may be made only if:

(1) Routine. They are routinely made by the lender in all types of loan transactions.

(2) Payments received. Payment has been received within the customary time frame allowed by the lender. The term "payment received" means that the payment in cash or by check, money order, or similar medium, has been received by the lender at its main office, branch office, or other designated place of payment.

(3) Calculating charges. The lender agrees with the applicant in writing that the rate or method of calculating the late payment charges will not be changed to increased charges while the Loan Note Guarantee is in effect.

If the term "late payment charges" is equivalent to an additional interest charge in the event of default, then plaintiff is barred from recovery. If, on the other hand "late payment charges" refers to the type of charges often imposed by consumer lenders on individual late payments (flat charges unrelated to principle and interest amounts on any monthly payment made beyond a certain date), then it is apparent to this court that plaintiff's interest provision, as contained in the Loan Agreement, is not barred by the regulation.

There are three reasons for finding that the regulation does not bar plaintiff's interest provision. They relate to the regulatory history of the provision, to the plain language of the regulation and to the policy apparent on the face of the provision. These points will be dealt with individually.

Both parties to this case have specially researched the regulatory history of the provision involved in this matter.[*] Plaintiff has found nothing. Defendant asserts that Mr. James E. Trumbell's September 27, 1984 letter to Ms. Cindy M. Gore of plaintiff bank is "a practical construction and application of § 1980.22 by a government official in the field, [and] deserves a considerable degree of deference." However, in this matter there are two reasons that argue against any such deference. First, upon a review of Mr. Trumbell's letter, it would appear that he does not support defendant's contention. The letter notes not that this twenty-five percent interest provi-

---

[*] Argument on the Motions for Summary Judgment was held on March 13, 1986. At that time the court requested both parties to submit Post Argument Memoranda concerning the interpretation of § 1980.22.

sion is contrary to a clear regulation, but rather, "The primary reason for this [non-entitlement to the interest claimed] is that the account was never in a default status...." The letter then later notes *"penalty language is acceptable,* but a note rate change requires proper language in the note and it does not exist." (emphasis added). And finally perhaps the "real" views of the agency are expressed when Mr. Trumbell notes, "We consider it greedy and involving questionable ethics." The letter also states "Also, in no way do we feel that our guarantee extends to any loan penalties, so we would also refuse payment on that basis."

It is quite clear that this letter does not help the defendant's proffered interpretation, and its logical inferences may even support plaintiff's interpretation. The second reason for not deferring to Mr. Trumbell's latter declaration supporting defendant's "interpretation", dated November 12, 1985, is that it was made for purposes of this litigation, in addition to its emphasis being different than the contemporaneous earlier letter. Mr. John Bowles' declaration of March 28, 1986, also is made in the context of this litigation, and amounts to no more than the statement that "our attorneys position is right."

Defendant also argues that Regulation Z at 12 C.F.R. § 226.18(*l*) (1986) interprets the type of interest "sought here as a late payment charge." This regulation is a disclosure regulation serving an entirely different function than the regulation at issue in the instant case. However, assuming that difficulty aside, the cited regulation seems to identify "late payment" with; "charges ... added to individual delinquent installments by a creditor who otherwise considers the transaction ongoing on its original terms." 12 C.F.R. Part 226, Supp. I, § 226.18(*l*) (1986). Thus, even this analogy seems to support plaintiff's position. Finally, defendant's conduct prior to default, the signing of the Lender's Agreement and the Loan Note Guarantee, is evidence at a minimum that defendant's interpretation of this regulation, prior to this litigation did not appear to bar plaintiff's recovery. It must be presumed that de-

fendant knew and understood what it was signing and would not have signed an agreement requiring the violation of a regulation when some of the agreement's provisions became operational. *Carpenter v. United States,* 4 Cl.Ct. 705 (1984), *aff'd without opinion,* 790 F.2d 91 (Fed.Cir. 1986).

Turning from the regulatory history to the regulation's plain language, that language seems to support the position that late payments are something other than additional interest in the event of default. The regulation notes that "Such charges may not be added to the principal *and interest due* under any guaranteed note." (emphasis added) 7 C.F.R. § 1980.22(b). This indicates that such charges are other than principal or interest due, like the flat fees commonly added to consumer monthly payments that are paid late. Also, the plain language states that late payment charges will be covered under certain conditions. This shows that the regulation is certainly not to be broadly construed as a flat prohibition of all "penalty type" provisions. Rather it indicates precise targeting at a certain type of late payment charge. The agency could have drafted it as a broad prohibition, but it did not. By analogy to contra proferentem principles in contract law this supports the logic of not stretching a regulatory provision to do a job that it was not designed to do.

The policy reason which apparently underlies the regulation is to prevent the government from being treated differently than a regular borrower, i.e., by imposing an additional burden upon the government. *See* 7 C.F.R. § 1980.22(a). However, this was not the case here. The twenty-five percent interest rate applicable in the event of default, does not place a greater burden upon the government than upon any other borrower or guarantor. It is not a special repetitive surcharge, as a flat standard late payment charge would be, that might place a particular burden upon guarantors of a great many loans. Further, the policy of trying to make the loan guarantee process a competitive one, at arms length in an era of wildly fluctuating interest rates, is more

consistent with plaintiff's reading of the regulation than defendant's.

II. Whether plaintiff's demand of a sum certain and defendant's tender of same constitutes an accord and satisfaction extinguishing defendant's alleged obligation.

If plaintiff entered into an accord and satisfaction with the FmHA, it surrendered its right to the interest applicable in the event of default. However, if there is a mutual mistake, it would obviate the precondition for accord and satisfaction just as it obviates contractual intent in the ordinary contractual framework. 6A Corbin, Corbin on Contracts § 1277 (1962).

There is no doubt that if no part of the claim is in dispute and the creditor sends by mistake a bill showing less than the amount actually due the payment of that amount does not operate as a full satisfaction.... Under such circumstances, a promise by the creditor to accept the check as full satisfaction would be without any sufficient consideration.

Just as in the case of other contracts, an accord can be set aside, or reformed and enforced, on the ground of fraud, accident, or mistake.

*Id.* § 1292 at 177–178 (1962).

There appears to be no factual dispute here as to what happened. Plaintiff contends that at the time it made its initial demand for payment, the provision of the contract which allowed for a twenty-five percent interest rate in the event of default was overlooked. In its original calculations, plaintiff determined the outstanding principal to be $896,705.87 with $189,896.51 owed in interest. Subsequent to the FmHA's payment of the foregoing amounts, plaintiff alleges it discovered that it had inadvertently used the wrong interest rate in its calculations. This discovery resulted in plaintiff's request for additional interest which was rejected by the FmHA. Defendant does not dispute this, though it does not characterize this as a mutual mistake.

■ In order to prove the affirmative defense of accord and satisfaction, the defendant must show a disputed claim or substituted performance agreed upon and accomplished and valuable consideration. *See Cheasapeake & Potomac Telephone Co. v. United States*, 228 Ct.Cl. 101, 108–109, 654 F.2d 711, 716 (1981). Mutual mistake obviates the existence of such a dispute.

■ It is clear from reading plaintiff's and defendant's affidavits that plaintiff had no intention of abandoning its right to demand the rate of interest at twenty-five percent in the event of default. There was no evidence presented by the defendant which would show that, in fact, a dispute existed, or, that plaintiff and defendant agreed to a compromised claim. It is clear from the record that the FmHA did not offer substantial performance in satisfaction of the debt, which plaintiff accepted, and which bound the parties. There is no evidence of an accompanying expression sufficient to make the plaintiff understand that it had been offered substituted performance in full satisfaction of its debt. A. Corbin *supra*, § 1277.

In the case at bar, defendant made no attempt to compromise the amount owed plaintiff. It is clear from the record that it was plaintiff who made the demand upon defendant; there was never a dispute as to the amount owed until the discovery of the calculation error and the second demand was made. Since a dispute is an essential component of accord and satisfaction; defendant's contention that the debt owed to plaintiff was extinguished does not comport with the facts of this case.

To support its premise that the parties entered into an accord and satisfaction, defendant relies on *Deal v. Federal Housing Administration*, 260 F.2d 793 (8th Cir. 1958). The plaintiffs in *Deal* sued the Federal Housing Authority ("FHA") which had insured a mortgage loan and administered property after a default by the borrower. The FHA sold the property and prepared a detailed accounting which was accepted by plaintiff mortgagee.

In *Deal*, however, the District Court found no mistake of fact or law. And the court raised "serious doubt" as to whether

the intervenor appellant, against whom the defense of accord and satisfaction was addressed, and who was seeking an accounting, was in a position to question the accounting. In our case the claim arises under very different circumstances. The accounting was performed by plaintiff albeit erroneously. In light of contemporary administrative law doctrine, it might also be questioned whether the court in *Deal* would have come to the same conclusion about the intervenor's right to an accounting. *See generally Association of Data Processing Service Org. v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). And, of course, most significantly mutual mistake does exist in this case.

III. Whether the parties intended to incorporate by reference the entire Loan Agreement into the Lender's Agreement?

Plaintiff contends that the parties intended to incorporate by reference the Loan Agreement into the Lender Agreement and the Note. Defendant argues that if the parties wished to incorporate by reference an extraneous writing into the contract for a particular purpose, that purpose must be specified and that there is no such evidence in this case. Defendant also takes the position that the mere reference "see enclosed Loan Agreement" contained in paragraph 11 of the Lender's Agreement, limits the incorporation to that section which deals with the schedule for submission of periodic financial statements by the Borrower (paragraph 9(A)). Thus, defendant argues, the language of the Loan Agreement generally and the default provisions specifically are not incorporated within the Note as part of the loan, but rather, the agreement was incorporated as a collateral agreement for security purposes only. According to this argument, FNB may have rights against the Borrower, but liability does not arise under the guarantee for the added interest in the event of default.

■ However, no specific language is necessary to incorporate an extraneous document by reference. *See Lowry and Co. v. S.S. Le Moyne D'Iberville*, 253 F.Supp. 396, 398 (S.D.N.Y.1966), *appeal dismissed per curiam on other grounds*, 372 F.2d 123 (2d Cir.1967).

■ Although plaintiff concedes that paragraph 11 of the Lender's Agreement refers to the Loan Agreement and requires Borrower to make periodic financial statements to the Lender, it also contends that if the parties intended to limit the incorporation soley to the submission by Borrower of monthly financial statements, they would have specified only that section. Here, that is not the case. The language "See enclosed Loan Agreement" does not specify which section of the Loan Agreement was intended to be incorporated. Therefore, the only reasonable inference is that the parties intended to incorporate the entire document by reference. It should also be noted that the entire Loan Agreement was provided to the FmHA for its review. This also lends support for plaintiff's position since presumably the entire document would not have been supplied if only one provision of it was applicable. At the very least, there should have been limiting language in the Lender's Agreement which would reflect which provisions were applicable and incorporated by reference.

IV. Proper calculation of the interest period.

■ The final issue raised by this litigation is the proper determination of the interest period. Defendant urges the court, to use May 1, 1982, as the proper date of default and arrives at $48,719.37 as the proper amount due if plaintiff prevails. Plaintiff argues that the date of default was October 26, 1981. It is the court's view that the proper default date was October 26, 1981. This is based upon the fact that when plaintiff received its last payment in February of 1982, that amount only brought the note current through October 26, 1981. Thus, the October date is the appropriate date at which to set the default for purposes of calculating interest.

The court finds two reasons persuasive for this finding. First, when plaintiff agreed to allow Borrower to defer payments, it did so after the loan was in default. Clearly, there was no consideration for plaintiff's agreement for the deferral.

Second, due to the fact that there was no consideration for plaintiff to defer payments, it would be unreasonable and inequitable to penalize plaintiff for attempting to assist Borrower. To do so would stand equity on its head and fly in the face of the public policy rationale which encourages lenders to refrain from invoking default procedures, if at all possible, against borrowers. In effect, defendant's position on this issue would punish this plaintiff for acting as a reasonable lender. People should not finish last merely because they are "nice guys."

### Conclusion

Based upon the foregoing reasons, the court grants Plaintiff's Motion for Summary Judgment. Defendant's Cross-Motion for Summary Judgment is denied.

The Clerk is directed to enter judgment in favor of plaintiff in the amount of $83,-414.53 plus simple interest at the rate of seven percent from March 7, 1985, until the date of payment. Each party will bear its own costs.