**TOBACCO WORKERS INTERNATIONAL UNION LOCAL 317, Plaintiff,**

v.

**P. LORILLARD CORPORATION, Defendant.**

**No. C–103–G–67.**

United States District Court, M. D. North Carolina, Greensboro Division.

July 16, 1970.

Robert G. Sanders and Larry Thomas Black, Charlotte, N. C., for plaintiff.

Thornton H. Brooks, Greensboro, N. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWIN M. STANLEY, Chief Judge.

This action arises under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The plaintiff alleges that the defendant has breached a collective bargaining agreement between the parties, but refuses to submit to arbitration seven grievances annexed as exhibits to the complaint. The relief prayed for is a judgment declaring that the Agreement has been violated, and for a mandatory injunction directing the defendant to proceed to arbitration of the grievances. The defendant in its answer denies any breach of the Agreement and specifically avers that the grievances are not arbitrable.

Following trial on the merits by the Court, the parties submitted proposed findings of fact and conclusions of law and briefs, and later appeared before the Court and orally argued their respective contentions.

After giving due consideration to the pleadings and the evidence, including exhibits, the request for findings of fact and conclusions of law, and briefs submitted, and the arguments of counsel, the Court now makes and files herein its Findings of Fact and Conclusions of Law, separately stated.

### FINDINGS OF FACT

1. This action arises under the Labor Management Relations Act, Title III, § 301(a) and (c), 29 U.S.C. § 185(a) and (c), and is brought for the purpose of securing a declaratory judgment pursuant to 28 U.S.C. § 2201.

2. The plaintiff is an unincorporated labor organization within the definition of the Labor Management Relations Act of 1947, as amended, Title I, § 2(5), 29 U.S.C. § 152(5) and Title III, § 301(a), 29 U.S.C. § 185(a). The plaintiff is the duly certified and recognized bargaining agent representing employees in an industry affecting commerce and has its principal office in Greensboro, North Carolina.

3. The defendant is a corporation incorporated under the laws of the State of New Jersey, and is duly authorized to transact business in the State of North Carolina. The defendant is actually doing business in North Carolina by the operation of a cigarette manufacturing plant in the City of Greensboro, North Carolina.

4. This court has jurisdiction of this cause under the Labor Management Relations Act of 1947, as amended, Title III, § 301(a), 29 U.S.C. § 185(a).

5. The plaintiff and the defendant entered into a collective bargaining agreement effective for the period of March 1, 1965, through March 1, 1968. The collective bargaining agreement contains an arbitration provision, the pertinent portions of which are as follows:

"ARTICLE 23–ARBITRATION

"A grievance which is limited to the subject matter of either:

\*      \*      \*      \*      \*      \*

"(b)   an application of the seniority provision of this Agreement in the case of promotions, layoff, and recalls;

and which has not been adjusted after having been processed through Step 5 of the grievance procedure may be submitted to arbitration upon the request of the Union, provided, such request is made within fifteen (15) days after the final decision on such a grievance has been given by the Director of Labor Relations or his superior.

"Thereafter, and before taking further steps under this article a majority of the members of the Union present at a regular or called meeting shall vote on the question of proceeding with the arbitration procedure of this Agreement for the particular unsettled grievance.

\*      \*      \*      \*      \*      \*

"The power and authority of the arbitrator deciding a grievance involving one of the two subject matters set out above shall be strictly limited to determining the meaning and operation of the explicit terms of this Agreement. The arbitrator shall have no authority to add to or subtract from, or in any way alter or modify any of the terms of this Agreement, or to impose on any party hereto a limitation or obligation not explicitly provided for in this Agreement."

6. The seniority provision of the Agreement, referred to in the limitations upon the subject matter of arbitration in Article 23, quoted above is found in Article 14 of the Agreement. This Article establishes seniority on departmental lines and regulates the application of such seniority in the case of promotions, layoffs and recalls. The Article contains no provision relating to back pay in respect to any breach of the seniority provisions.

7. Article 22 of the Agreement, entitled "Grievance Procedure," establishes six steps to be taken in the handling of an employee's grievance as follows:

"Should any employee covered by this Agreement believe he or she has been unjustly dealt with, or that the provisions of the Agreement have been violated, the employee shall within five (5) working days of the incident take the following steps, with no loss of pay in resolving the problem.

"Step 1.   The employee with or without (at the employee's option) his Steward, shall discuss his grievance with his Foreman and/or Department Superintendent, and they shall make every effort to settle it at once or at least within twenty-four (24) hours.

"Step 2. If the grievance has not been adjusted in Step 1, it shall then be referred to the President of the Union, or his designated representative, by the Shop Steward, and he shall discuss it with the persons heretofore involved, and if the grievance is not then adjusted, he will discuss it with the Department Superintendent and/or Foreman where every effort will be made to settle it within twenty-four (24) hours. If the grievance is not adjusted, it shall be reduced to writing on forms provided by the Company, dated, and signed by the aggrieved employee, Steward, Foreman, and Department Supervisor; it will then be presented by the President and Vice President of the Union to the Personnel Manager or his assistant where every effort will be made to settle it within forty-eight (48) hours. The Shop Steward and the aggrieved employee shall be present during the discussion of the grievance at Step 2, or any subsequent step.

"Step 3. If the grievance is not adjusted at Step 2, it will be referred by the President and Vice President of the Union to the Production Manager or his designated representative who shall have up to forty-eight (48) hours in which to make a decision.

"Step 4. If the grievance is not adjusted at Step 3, it shall be referred by the President, Vice President, and Recording Secretary of the Union, to the Plant Manager or his designated representative who shall have forty-eight (48) hours in which to make a decision. An International Representative of the Union may be present at this step if desired.

"Step 5. If the grievance is not adjusted at Step 4, it may be referred by the President and Vice President of the Union and/or the International Representative to the Director of Labor Relations, or his designated representative, at the earliest opportunity.

"Step 6. If the grievance involves a disciplinary penalty or a seniority problem in promotions—layoff—recalls, it may be referred to the arbitration as provided in Article 23. If the grievance involves subjects other than those provided for arbitration under Article 23, they may be referred to the Federal Mediation and Conciliation Service within thirty (30) days after failure of the parties to reach an adjustment under Step 5."

8. The only provision of the Agreement which gives a right to back pay to a grievant is Article 22, Section 2, which reads in pertinent part as follows:

"In the event any employee covered by this Agreement is laid off or discharged, and after investigation it is proven that such employee has been unfairly dealt with, such employee shall be restored to service with seniority unimpaired, and paid for all the time lost.

"It is understood that a case such as provided for in this paragraph shall be brought to the attention of the Manager of the plant by the Union as promptly as practicable, and *certainly within ten (10) days from the date of [sic] the employee was laid off or discharged."* (Emphasis supplied)

9. Betty Mae Greenwale filed a written grievance form on September 21, 1965, complaining of the defendant's failure to allow her to bid for a "male" job, allegedly in violation of Article 14 of the Master Agreement. Mrs. Greenwale's grievance was in the scope of the arbitration laws and was processed in accordance with the provisions of the Agreement and within its time limits. It was submitted to arbitration and, as a result of such arbitration, she was

awarded the job of adjuster in July of 1966. No back pay was claimed in the grievance. The award of the job on July 15, 1966, satisfactorily adjusted her grievance.

10. Ruby A. Fields filed a written grievance form on September 29, 1965, complaining of the defendant's failure to allow her to bid for a "male" job, allegedly in violation of Article 14 of the Master Agreement. Mrs. Fields was awarded the oiler's job, which was the subject of the grievance on August 1, 1966. No back pay was claimed on this grievance, and the grievant admits that the claim has been satisfactorily adjusted.

11. Ruby A. Fields filed another written grievance form on August 6, 1966, complaining of defendant's refusal to grant her back pay from the time of her original grievance filed on September 29, 1965, until the time she was awarded the oiler's job. The grievance stated no clause of the Agreement between the parties which was allegedly violated by this refusal, and there is no clause in the Agreement which allows the payment of back pay on account of a wrongful failure of the defendant to accord proper weight to seniority in job allocation. The arbitration clause of the Agreement specifically provides that the "arbitrator shall have no authority * * * to impose * * * any * * * obligation not explicitly provided for in this Agreement." Moreover, the grievance was not filed until August 6, 1966, more than ten months after the defendant's refusal to allow Mrs. Fields to bid for the oiler's job. Thus, the grievance was not filed "within five (5) working days of the incident," as required by Article 22, Section 1, nor within the 10-day absolute limitation provided in Article 22, Section 2, relating to claims for back pay, nor was the demand for arbitration "made within fifteen (15) days after the final decision on such grievance [was] * * * given by the Director of Labor Relations * * * as required by Article 23 of the Agreement."

12. Ruby A. Stanley filed a written grievance form on October 8, 1965, complaining of the defendant's failure to allow her to bid for a "male" job, and her resulting layoff, allegedly in violation of Article 14, Section 4, of the Agreement. This grievance form purported to grieve for five other females in the packing department. The grievance did not purport to grieve for any other employees in the packing department, nor does plaintiff claim any other than the six named persons. Mrs. Stanley and the other grievants were awarded the jobs which they sought on August 1, 1966. No back pay was claimed on this grievance. This grievance was satisfactorily adjusted by the award of the jobs sought. In any event, no provision in the Agreement authorizes the filing of a representative grievance by one employee on behalf of any one or more other members. Article 22 specifically provides that if "any *employee* * * * believes *he* or *she* has been unjustly dealt with * * * *the employee*" shall file a grievance. (Emphasis supplied). In this particular case, no employee other than Mrs. Stanley participated in the processing of her grievance at any stage. As a result, no other employee was covered by Mrs. Stanley's grievance.

13. Jean A. Way filed a written "representative" grievance on August 5, 1966, complaining of defendant's refusal to grant her and other female employees of the packing department back pay from the time of Ruby A. Stanley's grievance in 1965 until the time she, Mrs. Stanley, the other signatories to Mrs. Stanley's grievance, and the other female employees of the packing department, were recalled on August 1, 1966. No provision in the Agreement authorizes the filing of a "representative" grievance by any employee on behalf of any one or more other employees. Article 22 specifically provides that if "any *employee* * * * believes *he* or *she* has been unjustly dealt with * * * *the employee*" shall file a grievance. (Emphasis supplied). In addition, no other employees actually authorized Mrs.

Way to act in their behalf. As a result, no other employee was covered by Mrs. Way's grievance. In any event, Mrs. Way's grievance does not purport to cover employees who were not laid off in 1965. Moreover, this grievance was not filed until August 5, 1966, more than ten months after defendant's refusal to allow Mrs. Way and the other purported grievants to bid for jobs held by "younger" males. Thus, the grievance was not filed "within five (5) working days of the incident," as required by Article 22, Section 1, nor within the 10-day absolute limitation provided in Article 22, Section 2, relating to claims for back pay, nor was the demand for arbitration "made within fifteen (15) days after the final decision on such * * * grievance [was] * *. * given by the Director of Labor Relations * * *," as required by Article 23 of the Agreement.

14. Evelyn Gaines filed a written "representative" grievance on August 5, 1966, complaining of defendant's refusal to grant her and other female employees of the making department who had been laid off on March 7 1965, back pay from that date until their recall on August 1, 1966. The grievance, admittedly, does not purport to cover any employees who were not laid off in 1965. Further, no provision of the Agreement authorizes the filing of a "representative" grievance by one employee on behalf of any one or more other employees. Article 22 specifically provides that if "any *employee* * * * believes *he* or *she* has been unjustly dealt with * * * *the employee*" shall file a grievance. (Emphasis supplied). As a result, no other employee was covered by Mrs. Gaines' grievance. Moreover, this grievance was not filed until August 5, 1966, more than ten months after defendant's refusal to allow Mrs. Gaines and the other purported grievants to bid for jobs held by "younger" males. Thus, the grievance was not filed "within five (5) working days of the incident," as required by Article 22, Section 1, relating to claims for back pay, nor was the de-

mand for arbitration "made within fifteen (15) days after the final decision on such * * * grievance [was] * * * given by the Director of Labor Relations * * * as required by Article 23 of the Agreement."

15. James M. Talley filed a written grievance form on November 24, 1965, complaining of defendant's failure to allow him to bid for a "female" job, and his resulting layoff, allegedly in violation of Article 27 of the Agreement. At all times, this grievance has been processed on the basis that it concerned a violation of Article 14, Section 4. Mr. Talley was subsequently rehired in another department as a packer crate tender. No back pay was claimed on this grievance. This grievance was satisfactorily adjusted by the recall. Mr. Talley is not covered by the terms of any other grievance concerned herein.

16. Plaintiff made timely requests that the grievances of Betty Mae Greenwale, considered in Finding 9, Ruby A. Fields, considered in Finding 10, and Ruby A. Stanley, considered in Finding 12, be submitted to arbitration. These grievances have been satisfactorily adjusted. There is no evidence that plaintiff ever requested that any other grievance "be submitted within fifteen (15) days after the final decision on such grievance [was] * * * given by the Director of Labor Relations." Thus, no timely request for arbitration has been made in the case of the grievances of Ruby A. Fields, considered in Finding 11, Jean A. Way, considered in Finding 13, and James M. Talley, considered in Finding 15.

17. There is no indication in the Opinion and Award in the Betty Mae Greenwale arbitration, considered in Finding 9, that the grievance purported to be a class grievance or to govern the outcome of any other grievance. Neither was there any agreement, written or oral, between plaintiff and defendant that the outcome of the Greenwale arbitration would govern the other grievances herein involved.

18. The other employees involved in the Ruby A. Stanley grievance, the Jean A. Way grievance, and the Evelyn Gaines grievance, were recalled on August 1, 1966, because defendant needed several hundred additional employees at that time. The recall occurred over six weeks after the Opinion and Award in the Greenwale case, and had no connection with it except insofar as officials of the defendant corporation viewed the recall as an opportunity to resolve the other grievances even if they were under no legal obligation to do so.

19. The unadjusted grievances herein, that is, those which claimed back pay, were filed more than ten months after the layoff to which they pertain.

20. The back pay for the employees which plaintiff alleges are covered under their grievance occurred at the rate of approximately $25,000.00 per month during this time, and amounted to over $250,000.00 before any notice of these employees' claims was presented to the Company.

21. The computation of back pay for these employees would require that they be reslotted into jobs which they might have been qualified to perform at the time of their layoff. Their qualifications at that time would have to be determined and compared to those of other persons employed at that time by supervisors employed at that time. Many of such employees and supervisors are no longer employed by defendant and are unavailable for such a determination.

22. When each purportedly aggrieved employee was reslotted into a job she was determined to have been able to perform, the person then employed in that job would be displaced and determination would have to be made whether there was being employed a person with less seniority than the displaced employee, and whether the displaced employee could perform that job. Such determination would require the knowledge and testimony of persons who, by cause of the lapse of time between grievance layoff and their claims, are no longer employed by the defendant or available for testimony.

23. The multiple shifting of over 300 employees into new and unfamiliar jobs would reduce the efficiency of the company's production by approximately fifty percent.

24. If defendant had known in September of 1965 that the claims contested herein would be filed, there is every likelihood that it would have attempted some immediate settlement of the dispute so that the difficulties enumerated above would not have arisen.

## DISCUSSION

It is conceded that the Betty Mae Greenwale grievance of September 21, 1965, has been satisfactorily adjusted through arbitration. As to all other grievances, plaintiff contends that they involve an application of the seniority provisions of the Agreement in the case of promotions, layoffs, and recalls, and are thus subject to arbitration. The defendant contends that none of the other grievances are arbitrable because some of them have been satisfactorily adjusted, others were not the proper subject for arbitration under the Agreement, some were not processed in accordance with the time limits specified by the Agreement, and laches on the part of the plaintiff and its members in delaying over ten months before filing the grievances and instituting this action have caused severe damage to the defendant.

The guiding principles of law that should be applied in determining the disputed issues are stated in United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) as follows:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty

of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (Emphasis supplied)

■ If courts were permitted to apply principles of law governing ordinary contracts, little difficulty would be experienced in resolving the disputes. But this is not the case for the reason that "a collective bargaining agreement is not an ordinary contract. '* * * [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate * * *. The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant.' Warrior & Gulf, *supra*, at 578–579, [80 S.Ct. 1347] (footnotes omitted)." John Wiley & Sons v. Livingston, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964).

It is further stated in the *Wiley* case, at Page 557, 84 S.Ct. at page 918 that once the court has determined "that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."

Moreover, the weight of authority is that the issue of "laches * * * is one for the arbitrators to decide." Trafalgar Shipping Co. v. International Milling Co., 2 Cir., 401 F.2d 568, 571 (1968).

■ As earlier stated, it is conceded that the Betty Mae Greenwale grievance of September 21, 1965, has been satisfactorily adjusted by arbitration. The record also established that the September 29, 1965, grievance of Ruby A. Fields was adjusted on August 1, 1966, in which she was awarded the oiler's job which she was seeking. No back pay was claimed, and there is nothing left for arbitration.

■ The Ruby A. Fields grievance of August 6, 1964, is likewise defective for the reason that the only relief sought is back wages from September 29, 1965, when she filed her first grievance, until August 1, 1966, when she was awarded the job she was seeking. There is no provision in the Agreement making arbitrable the loss of wages for delay in applying the seniority provisions of the Agreement. The issue of back pay is arbitrable only when an employee has been unjustly laid off or discharged. Mrs. Fields continuously worked at her old job until she was awarded the job of oiler on August 1, 1966. Consequently, it can be stated with "positive assurance" that the defendant has never contracted to submit to arbitration the question of back wages when the employee remains in continuous employment.

The Ruby Stanley grievance of October 8, 1965, requires the same treatment as the September 29, 1965, grievance of Ruby A. Fields. In other words, the grievance was satisfactorily adjusted on August 1, 1966, by awarding Mrs. Stanley and the other six persons named in the grievance the jobs they were seeking. No back pay was claimed, and there is nothing left for arbitration.

■ The grievance filed by Jean A. Way on August 5, 1966, calls for different treatment. Mrs. Way's grievance deals with back pay while being "unjustly laid off," and thus, in the opinion of the Court, comes squarely within the provisions of Article 22 § 2 and Article 23(b) of the Agreement. Whether the grievance was timely filed and the application of the doctrine of laches are matters for the arbitrator, not the Court. It should be pointed out, however, that the effort of Jean A. Way to file a "representative" grievance is a nullity. There is no provision in the Agreement for filing "representative" grievances, and it is crystal clear that the draftsmen of the Agreement intended that grievances should be filed separately by each aggrieved Person. It follows that Jean A. Way is entitled to compulsory arbitration of her grievance of August 5, 1966, but such right does not extend to any other person she pretended to represent.

The grievance of Evelyn Gaines of August 5, 1966, occupies the identical status of the Jean A. Way grievance, and thus is subject to compulsory arbitration as to Evelyn Gaines alone. The same is true with respect to the grievance filed by James M. Talley on November 24, 1965.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. The individual grievances of Jean A. Way, Evelyn Gaines, and James M. Talley are subject to compulsory arbitration.

3. The grievances of Betty Mae Greenwale, Ruby A. Fields, and Ruby Stanley are not subject to compulsory arbitration.

4. The questions of laches and procedural irregularities are questions for the arbitrator, not the Court.

A judgment will be entered accordingly.